In re OLSON. HARDY v. OLSON et ux.

No. 6994. Decided May 1, 1947. (180 P. 2d 210.)

366

See 43 C. J. S. Infants, Sec. 7; Liability of father for support of child that he in effect abandoned, note, 32 A. L. R. 1466. See, also, 39 Am. Jur. 610, 648 et seq.

**368**

*Lewis Larson,* of Manti, for appellants.

*Grover A. Giles,* Atty. Gen., *Herbert F. Smart,* Deputy Atty. Gen., and *John S. McAllister,* County Atty., of Mt. Pleasant, for respondent.

McDONOUGH, Chief Justice.

The appellant, as father of Judith Laine Olson, appeals from a judgment of the juvenile court whereby said child was adjudged to be a dependent and neglected child and was awarded to the custody of the petitioners and appellant required to pay $30 per month for the support of said child. Judith is now 13 years of age.

The child's mother died in September, 1938, in a hospital in Price. For a couple of months prior to that time the child's parents lived with the maternal grandparents. Just prior to the death of the mother, she made a request that the grandparents take care of the children until she recovered. The father acquiesced in such arrangement. The mother's parents paid her hospital and doctor bills, and took the children into their home. Judith has lived there for over 8 years, during which time her father has contributed nothing to her support, but has occasionally given her some presents. Six years ago he remarried, but until recently he made no effort to induce his daughter to come to his home. A little over 4 years ago the county welfare department began to contribute $25 per month to the support of Judith. Her father testified that he knew nothing of such welfare contributions. The grandmother died a little over a year ago. Glen Hardy and Maxine Hardy, his wife, uncle by marriage and maternal aunt of Judith, then came to the home where Judith is living to care for her and also for her aging grandfather who is the father of Mrs. Hardy.

Judith is contented with her grandfather's home where she has lived for 8 years and she wants to stay there. She is happy in that environment. She stated positively that she does not want to live in her father's home. There is some evidence of the father having indulged in intoxicating drink on occasions when he visited Judith, which she resented. She evidently derived little enjoyment from his infrequent visits. Judith stated that if required by the court to go to her father's home she would obey such a court order, but that she prefers to remain where she now lives. She plans to enter the Wasatch Academy for her secondary education in the community where she lives. There is a marked bond of affection between Judith and her grandfather and also between her and her maternal aunt, Maxine Hardy, whom Judith calls "mother."

On August 20, 1946, Mrs. Maxine Hardy, also known as Mrs. Glen Hardy, signed a petition in the juvenile court of Sanpete County whereby petitioner recited that Judith Laine Olson, then 12 years of age, was a dependent and neglected child on July 1, 1946, as well as since 1938 when her mother died, in that the father of said child has failed to care for her or to provide for her, and that her grandparents have been caring for said child. A summons was issued requiring the father to appear at a specified time. He appeared for the trial with counsel, but filed no petition and made no application for any judicial relief. At such hearing he stated that he would like to have his daughter live in his home and that he is able to provide for her care. He testified that the only reason he did not previously provide for her care and training was that he felt that the grandparents were taking adequate care of the child and that he did not desire to interfere. He admitted that he made no offer to assist financially during a period of 8 years, but stated that no request was made of him for any money.

The juvenile court found that the child had been neglected by her father and was therefore a dependent and neglected child. It awarded her custody to the petitioner, Maxine Hardy, and her husband, Glen Hardy, subject to the super-

vision of the county welfare department. The court also ordered the father to pay $30 per month for support of said child.

To reverse the judgment, appellant assigns error in substance as follows: (1) that the petition does not state facts showing neglect on the part of appellant to support the child. (2) That the findings are contrary to the evidence. (3) That the conclusions of law disregard both the law and the facts. (4) That the court had no authority to place the child in the custody of her maternal aunt, under the supervision of the county welfare department or otherwise. (5) That the court had no authority to require appellant to contribute to the support of Judith when custody was awarded to a third party.

The powers of juvenile courts are conferred by statute. Section 14-7-4, U. C. A. 1943, provides, inter alia:

"The juvenile court shall have exclusive original jurisdiction in all cases relating to the neglect, dependency and delinquency of children who are under eighteen years of age, except in felony cases as hereinafter provided, and the custody, detention, guardianship of the person, trial and care of such neglected, dependent and delinquent children * * *."

Section 14-7-5 contains various statutory definitions. Some terms are specifically defined, while other terms are merely declared to "include" specified conditions or circumstances:

"The words 'neglected child' include:
"A child who is abandoned by his parent, guardian or custodian.
"A child who lacks proper parental care by reason of the fault or habits of the parent, guardian or custodian.
"A child whose parent, guardian or custodian neglects or refuses to provide proper or necessary subsistence, education, medical or surgical care or other care necessary for his health, morals or well-being."

Other conditions need not be detailed here.

"The words 'dependent child' include:
"A child who is homeless or destitute or without proper support or care through no fault of his parent or guardian.
* * * * *
"A child whose custody is in question or dispute."

The contention that the petition fails to state facts sufficient to show neglect on the part of appellant to support his minor child, assumes that there are allegations which negative parental neglect by showing that the child has been and is now being well cared for by the grandfather and maternal aunt. The petition states that since 1938 appellant as father of Judith has failed to provide support or training for her, and that her grandparents have been caring for her. It is not alleged that the grandparents rendered such care at the direction or under the control of the father. An allegation that other relatives or friends provide care for a child neglected by a parent, does not negative the averment that a parent has neglected his parental responsibilities.

By specifying that the words "neglected child" include a child

"whose parent, guardian or custodian neglects or refuses to provide proper or necessary subsistence, education, medical or surgical care or other care necessary for his health, morals or well-being"

the statute seeks to reach the person who is primarily responsible for the care and support of a child. The fact that some third person may be providing care for a child by reason of the neglect of the parent to do so, does not deprive the juvenile court of jurisdiction to inquire into the welfare of such child and to fix responsibility and determine proper custody for the child within the scope of the statutory authority granted to the court.

Assuming that the petition failed to state facts sufficient to show that Judith is a "dependent child," nevertheless by alleging facts showing that she was neglected by her father and that some third person was then providing such care, the petition alleges sufficient facts to confer jurisdiction on the court to conduct an inqury into the status and well-being of the child. See *In re Bradley,* 109 Utah 538, 167 P. 2d 978. The fact that the statute specifies that the words "dependent child" shall include "a child who is homeless or destitute" through no fault of his parent,

does not mean that a child who is not provided with a proper home by reason of fault and neglect of a parent is not a dependent child. The statute confers jurisdiction on the juvenile courts in certain cases where a parent is not blame-worthy, but it is certainly designed to confer jurisdiction where the parent is able to provide care and supervision and is recreant to his parental duty by failure to provide such support.

In this case the petition does not allege sufficient facts directly to show dependency, but it does show neglect on the part of the father to support his child.

A review of the record in response to appellant's contention that certain findings of the court are not supported thereby reveals sufficient competent evidence to support the major portion of them and sufficient material findings supported by the evidence to uphold that portion of the judgment that the child was neglected and that she should be placed in the custody of her maternal aunt and uncle by marriage. Though some findings were perhaps surplusage, we cannot disturb the judgment if on the basis of the whole record the evidence supports those which warrant the judgment rendered.

In attacking some of the findings appellant contends that the evidence does not show neglect of the child for the reason that the grandparents assumed the responsibility of providing care and training, and did not request assistance from the father. The fact that the maternal grandparents honored the request of the dying mother, to look after the children certainly did not absolve the father of the duty to furnish them necessaries. See 39 Am. Juris., Parent and Child, sec. 41, pp. 648, 649. His own testimony indicates that he did not lack employment. Nevertheless he did not offer to do anything to measure up to his parental responsibility. He waited over 8 years, and at least 6 years after he remarried, before manifesting any apparent interest to have his daughter live in his home.

Appellant complains of the inquiry into his habits and conduct and he attempts to dispute the validity of findings

made with respect thereto. The court was not attempting to direct the personal life of appellant nor to dictate his personal habits as assumed by counsel, but to ■ ascertain his habits and their possible effect upon the welfare of his daughter as well as to form a judgment as to the reasonableness of the choice expressed by Judith. In making inquiry into the conduct of the appellant over a period of 8 years, the court found a reasonable basis for the choice made by Judith to remain where she now lives. The court made a general finding after hearing her testimony and the testimony of others, and after permitting her to express her desires, that it is for her best interests to remain where she is now. She is properly adjusted in her present environment, subject to wholesome influences, and she is happy.

This court has held that in cases where the custody of a child is to be determined, if a child is over 10 years of age, the court should inquire of the child and take into consideration the child's desires regarding future custody. *Anderson* v. *Anderson*, 110 Utah 300, 172 P. 2d 132. ■ And see *Stoker* v. *Gowans*, 45 Utah 556, 147 P. 911, Ann. Cas. 1916E, 1025. Judith was over 12 years of age at the time of hearing and she had reached an age when she could exercise some degree of intelligent choice. Furthermore, during the years that she lived in the home of her grandfather, there developed a bond of affection between her and the persons occupying such home. She formed educational, cultural and religious associations in the community where she resides. *In Ex parte Britt*, 176 Cal. 177, 167 P. 863, a grandaunt obtained custody of a child after death of the mother who had been divorced from the father, and the child manifested great love for the grandaunt and a great aversion toward her father. True, the father's conduct was reprehensible in a number of particulars. It was held that the mere legal right of a parent to have custody of a child should not be enforced against a child's manifest inclination and reasonable choice to remain where living, particularly where a parent has waited an unreasonable period of time

before attempting to provide a home for his child. The wishes of a child, as opposed to the legal rights of a parent, are particularly persuasive where the parent has voluntarily, for a long period of time, allowed the child to remain with another family. 39 Am. Juris., Parent & Child, sec. 21, p. 610, and cases cited.

This case is unlike the situation in *Barry* v. *Sparks*, 306 Mass. 80, 27 N. E. 2d 728, 128 A. L. R. 983, cited by appellant. In that case the father in a divorce proceeding was required to pay a specified monthly sum to a third party for the support of the child. After the death of the divorced mother, the court held the father's rights were those of a surviving parent. Nor is the case of *Chandler* v. *Whatley*, 238 Ala. 206, 189 So. 751, 756, also cited by appellant, in point here. After a 3 year old child was awarded to the mother in a divorce proceeding, the mother remarried, then died when the child was 6. A contest then arose between the father and stepfather over custody. The father had not been required in divorce proceedings to support his child, and the court held that he therefore violated no duty of financial support. The court declared that the paramount consideration is the future welfare of the child, and that the superior claim of a parent should not be disturbed unless the interests of the child plainly require. In that connection the court observed:

"We are mindful that in many cases the wishes of a child, who has reached sufficient maturity to form lasting ties, and make an intelligent choice, is given weight in the solution of the question of custody."

*In Ex parte Day*, 189 Wash. 368, 65 P. 2d 1049, the parents were divorced. The father failed to support the children and the mother placed them with friends prior to her death. Some time later, these children were adjudged to be dependent children within the meaning of the juvenile court law. The father sought their custody. On appeal the court held that in determining whether children should be taken from the home of friends of the highest character who were willing and able to care for them and placed in the custody

of the father, the court would not take in consideration the relative degree of comfort or luxury which might surround them, but would consider where the child would receive the greater degree of affection and discriminating care which would tend to best fit them to take their places in the active affairs of life.

Judith has become greatly attached to her grandparents and to her aunt and uncle. She is happy in her present environment, and she has indicated why she would not likely be happy with her father. Unfortunately for appellant, he has missed opportunities of winning her confidence by his prolonged neglect. He has not shown any reasons for uprooting her from the environment and home in which he has permitted her to grow up as a result of his own neglect. He has not shown that she would be better off in his home. Furthermore, the choice expressed by Judith has foreclosed the possibility that he might be awarded her custody after such a long delay.

Appellant filed no application for custody of his daughter. He did not traverse the allegations that he had neglected to support her for 8 years. It followed that the court had the authority to determine what should be done respecting custody when the alleged neglect was established, ▉▉▉ and to fix responsibility for such custody. There was no issue over custody on the face of the record. Counsel for appellant assert that in a contest between a parent and a stranger for custody of a minor child, the parent is entitled to custody on the basis of a presumption that it is for the best interests of the child for the parent to have custody. Assuming pleadings sufficient to create an issue over custody, the presumption mentioned is a rebuttable one and not an inflexible rule. The ultimate concern of the court is always: What is for the best interests of the child? See *Walton* v. *Coffman*, 110 Utah 1, 169 P. 2d 97, and *Baldwin* v. *Nielson*, 110 Utah 172, 170 P. 2d 179, on rehearing 174 P. 2d 437. Presumptions must yield to evidence that the interests of a child require it to be in the custody of another. The undisputed evidence is that the father in this case ne-

glected to support Judith or to provide for her welfare except by some infrequent gift of an article of clothing and permitted bonds of affection to develop between Judith and those who did provide for her well-being, until she reached such age that her choice as to her custody became material in determining the issue.

Appellant complains that in view of the assistance granted by the county welfare department in the sum of $25 per month, there is no basis for the finding that the Hardys are financially able to provide for the care of the child. The assistance from the county welfare department was first extended 4 years ago to the grandparents. It was not terminated when the Hardys came to live at the home of the grandparents following the death of the grandmother, but the Hardys did not solicit such aid. While the evidence shows the Hardys to be people of modest means, their ability to provide proper care and training for Judith does not appear to be open to dispute.

In connection with the argument that the conclusions of law disregard both law and fact, appellant contends that the court has no authority to place the child in the custody of the maternal aunt, either under the supervision of the county welfare department or otherwise. He premises his argument on the assumption that because neither the juvenile court nor the county welfare department is a licensed child placement agency, the court lacked the authority to place Judith in the custody of her aunt under the supervision of the welfare department. Counsel cite various statutes which relate to the placement of children for the ultimate purpose of adoption. Those statutes have no application here. The juvenile court requires no license from some executive branch of the government to carry out its judicial functions. The juvenile court is created by statute and its powers are conferred by statute, to which we shall again refer, in considering the final contention of appellant.

Such contention is that the court had no authority to require appellant to contribute to the support of his

child when custody was awarded to a third party. A portion of Section 14-7-4, U. C. A. 1943, not hereinabove quoted, reads as follows:

"(1) In any case in which the court shall find a child neglected, dependent or delinquent may, in the same or in any subsequent proceedings, upon the parents of such child being duly summoned or voluntarily appearing as hereinafter provided, proceed to inquire into the ability of such parents to support the child or contribute thereto, or into the fitness of such parents to continue in the custody and control of such child. The court may enter such order or decree as shall be according to law and/or equity in the premises, and may enforce the same in any way in which a court of law or of equity may enforce its orders or decrees."

This provision clearly contemplates that if the juvenile court makes a proper findng that a child has been neglected by one having the duty to provide for such child, that the court shall take some appropriate measures within the scope of the statute in the interest of and on behalf of such child. It is apparent that there would be no occasion for a court to order a parent to contribute to the support of a child if the custody of such child were granted to the parents and the parents were actually supporting such child. The statute embraces situations where parents or one of them may not have custody. It was not the intent of the legislature that a parent recreant in the performance of a parental duty to provide sustenance and training for a child, who no longer had actual custody of the child, should be relieved of all financial responsibility or placed beyond the reach of the court. The purpose of inquiring into financial ability is to ascertain whether a parent is either able to support his child or to contribute to the support of his child.

The present Oregon statute, O. C. L. A., sec. 93-619, contains language which is similar to the provisions of Sec. 14-7-4(1), U. C. A. 1943. In *Bartlett* v. *Bartlett*, 175 Or. 215, 152 P. 2d 402, it was held that whenever a child becomes a ward of the juvenile court under the statute, the court in acting for the best interests of a child may not only provide for custody, but also for support. The court further

declared that the circuit court in the exercise of its juvenile court powers is authorized upon awarding custody of a child to the mother, to order the father to support the child although by the terms of the divorce decree awarding custody to the mother no duty was imposed on the father to contribute to the support of the child.

Section 1987-8, Remington's Rev. Stat. of Washington, contains a somewhat similar provision. See. *Ex parte Day,* supra.

The contention of appellant that the juvenile court has no authority to require a father to support his child if custody is awarded to another, disregards the plain language of the statute. However, these statutes all require that the parent shall be given adequate notice of such a proceeding. In this case appellant was given no notice that the court would inquire into his present ability to support the child or to contribute something to her support. Apparently, the order made was based upon evidence which was presented incidental to neglect. No doubt the summons might have included such notice of inquiry and a statement that the court might enter some order requiring the father to support his daughter, but failure to give such notice in effect deprived appellant of his day in court on that issue. There should have been some petition or other form of pleading to outline the scope of the inquiry on the matter.

The order granting custody of Judith to the Hardys, being supported by sufficient competent evidence, is affirmed; but that portion of the judgment whereby appellant is required to contribute $30 per month for the support of his daughter is vacated and set aside without prejudice to appropriate proceedings upon proper notice and application being made therefor to have his responsibility determined by said juvenile court. Each party shall pay his or her own costs on this appeal.

PRATT, WADE, WOLFE, and LATIMER, JJ., concur.