48 N.W.2d 230 (1951)
SAVERY, County Atty.,
v.
EDDY et al.
No. 47811.
Supreme Court of Iowa.
June 5, 1951.
Rudolph & Rudolph and Dalton & Dalton, of Atlantic, for appellants.
Don Savery, County Atty., John E. Budd, Present County Atty., Atlantic, for appellee.
MULRONEY, Justice.
Our original opinion in this case, reported in 45 N.W.2d 872, ordered all of the Eddy children returned to their parents. We granted rehearing as to those children who had been adopted by other parties pending the appeal in the original case. See order reported 47 N.W.2d 230. Pursuant to that order, affidavit proof has been filed which establishes that Beverly, Charles, Marilyn, Robert and Esther were all adopted after the order of September 15, 1948 which placed the "permanent" custody of the children in the American Home Finding Association. The proof shows that a certified copy of said order of September 15, 1948 was sent to the American Home Finding Association on September 16, 1948 and said association received no notice or knowledge of an appeal from said order.
All of said children were placed in homes of persons who had previously applied to the association as prospective adoptive parents shortly after the order of September 15, 1948. They remained in these homes for more than one year before adoption proceedings were instituted in the counties where the prospective adoptive parents resided and during this period the children and the homes they were in were regularly visited and investigated by the association's social workers. Within a month or two after the required year's residence of the children with their prospective adoptive parents, the latter started adoption proceedings under the provisions *231 of Chapter 600, Code 1950, I.C.A. In each instance the proceedings resulted in a decree of adoption, changing the children's names, and granting rights and imposing duties between adoptive parents and the children, the same as exist between natural parents and children, including rights of inheritance. Beverly and Charles, who are now about 8 and 5 years old respectively, were adopted into one home. Marilyn and Robert, who are now about 10 and 9 years old respectively, were adopted into one home. Esther, who is now about 6 years old, was adopted into one home.
The proof now before us is to the effect that since the adoption of the children the association, through its officers, has made an investigation relative to the welfare of the children in their respective adoptive homes. The officer's affidavit states: "None of the children remember their natural parents * * * The children are happy and well placed. The parents are happy with the children and are rearing them as their natural children and the general welfare of each child is beyond question in the adoptive homes. None of the adoptive parents desire to relinquish the children. The adoptive parents love the children as their own."
Now that we are confronted with this record of adoptions we must determine whether the adoptions were affected in any way by the appeal taken by the parents from the order of September, 1948. There is no question but that order was a valid and binding order until the reversal in this court. The effect of the order was to deprive the natural parents of custody and grant permanent custody to the American Home Finding Association. Section 232.22, Code 1950, I.C.A., specifically provides that when the trial court makes such an order of custody the institution becomes the proper party in place of the parents, for adoption proceedings. Section 232.23, Code 1950, I.C.A., provides that the trial court could have placed restrictions deemed "advisable for the welfare of the child" in its order committing the children to the institution and "the jurisdiction of the court over said proceedings and said child shall continue until the child is legally adopted."
Though the appeal in a case involving child custody is triable de novo in this court it has never been held that the perfection of an appeal from a custody order operates to vacate the judgment of the lower court. Scheffers v. Scheffers, Iowa, 44 N.W.2d 676. This court, under the rule announced in the Scheffers case, could, upon proper application, have made appropriate orders for the welfare of the children, and to preserve the status quo pending the appeal. Perhaps the trial court, under the continuing grant of jurisdiction, Sec. 232.23, Code 1950, I.C.A., "until the child is legally adopted" could have made appropriate orders even after the notice of appeal, that would have prevented adoption. The order appealed from was a self-executing order which required no process to carry out its mandate. The association had had custody of these children for two years and eight months prior to the order of September, 1948. When the latter order was made, the association under the clear provisions of the statutes was authorized and empowered to place the children out for adoption, unless restricted by this court or possibly a subsequent order of the trial court. The record shows no application, to stay the adoptive authority implicit in the trial court's order, was ever made in this court or in the trial court. We must hold that the association's exercise of this authority resulted in legal adoptions long before the parties got around to filing the record on appeal in this court.
Perhaps at the start it was thought an order to prevent adoption would not be necessary since an adoption cannot ordinarily be accomplished in less than a year and it should not take a year to perfect and submit an appeal in such a case as this. But as time went on and appellants sought, and obtained from the trial court, ten extensions of time of thirty, sixty, or ninety days each for filing the record it should have been perfectly apparent that some action should be taken by appellants to restrict the full sweep of the order if the *232 status quo was to be preserved. The record here shows all of the adoptions were completed in October and November of 1949 while the printed record on the appeal was not filed in this court until October of 1950. We place no blame for the delay for we do not know all of the facts. We know there were arguments between counsel as to settling the record, but it does seem the case was one that called for co-operation by all parties to the end that there be a speedy and final adjudication of custodial rights. The custody of children of such tender years should be settled as quickly as possible for little children, like tender plants, have roots; they are roots of affection that are nurtured in the sunshine of a good home. The longer they grow in mutual love and affection with those who fill the place of parents, the greater the shock of transplanting. The legislature has wisely encouraged early adoptions when permanent orders of custody in favor of institutions are made. All will agree that an institution does not furnish the most desirable atmosphere in which to rear young children. They need a home and the legislature has said an unrestricted order of custody to an institution is a delegation of authority to that institution to consent to the adoption, to the end that the children receive a home. The adoption statutes provide such delegated consent will result in legal adoptions. We cannot under this record, and under the plain provisions of the statutes hold otherwise.
It is our conclusion that the adoptions of these children were legal adoptions under the provisions of the statute. Regardless of what we did in our former opinion reversing the order of September, 1948, that order was valid and binding until the reversal. More than a year before that reversal these children had been adopted after strict compliance with the adoption statutes. Those who voluntarily and generously take children for adoption have a right to assurance that the relationship they so kindly assume will be permanent. Our conclusion therefore is that as to these children, who were adopted pending the appeal, the adoptions are valid. This means that the trial court's order of custody of September, 1948, as to the children named herein, will remain unchanged. This amounts to an affirmance in part and changes our ruling on the entire appeal to an affirmance in part and a reversal in part.
Affirmed in part and reversed in part. All Justices concur.