Russell S. McKay, appellee, v. Teresa Fay Ruffcorn, defendant; June Ruffcorn Andersen, appellant.

No. 48767.

(Reported in 73 N.W.2d 78)

November 15, 1955.

Ross F. Caniglia, of Council Bluffs, and Paul A. Harmon, of Omaha, Nebraska, for appellant.

Kenneth Acrea, of Missouri Valley, for appellee.

GARFIELD, J.—This is another of the many regrettable controversies that come before us involving custody of a child. Fortunately there is little doubt, as the trial court found, this child has received excellent care, since she was nine months old,

in the home of her aunt and uncle and her best interests and welfare will be promoted by permitting her to remain there.

June Alexander and Charles Ruffcorn were married in 1943. She was 15, he was 18. Teresa, youngest of their four children, was born in the spring of 1948. Ruffcorn was killed in an automobile accident in August of that year. Care of the four young children was too much for June and she did not have a suitable home for them. Mrs. Donna Withem, Ruffcorn's sister, helped care for Teresa "off and on" until she was nine months old. Then, in January or February 1949, Donna and her husband, with June's consent, took Teresa to their home where she has since lived continuously.

Between the time Ruffcorn died and trial hereof in March 1954, June was married and divorced twice and married a third time (fourth in all) in June 1953 to her present husband, Carl Andersen. During the five years following Ruffcorn's death, the three older children lived with June's parents except for three or four months when June and her third husband enrolled them in a school in Omaha.

June and her present husband reside in a three-room apartment in Omaha. Before school opened in September 1953 they took the three older children there to live with them. June has stayed in Omaha much of the time since Ruffcorn died. February 3, 1954, June made a demand on the Withems for Teresa but they refused to surrender her. The Withems then evidently consulted the county attorney of Harrison County regarding their right to the child's custody.

The county attorney (who had been June's attorney in her two divorce suits) prepared and filed on February 26 what he designated "Complaint" sworn to by him, alleging Teresa is "an abandoned child as defined by Code chapter 232.2" and asking that the necessary steps be taken to investigate the charge to the end that such orders be made as the court may deem advisable.

Incidentally the "complaint" should have been designated "petition" (Code section 232.5) and should have alleged the child was "dependent" or "neglected" as defined by section 232.2, rather than "abandoned." An abandoned child is not defined in 232.2 or elsewhere in chapter 232. The only definition in

232.2 is of a dependent or neglected child. June, appellant here, has not mentioned any of the above inaccuracies in the petition and apparently was not misled thereby. It is not suggested the trial court's finding Teresa was a neglected child within the meaning of section 232.2 is outside the issue raised by the petition. We regard these matters as unimportant. See in this connection Code section 232.39; rule 106, Rules of Civil Procedure; In re East Minors, 143 Iowa 370, 378, 122 N.W. 153; Cross v. Hermanson Bros., 235 Iowa 739, 742, 743, 16 N.W.2d 616, 618; Sanford v. Luce, 245 Iowa 74, 80, 60 N.W.2d 885, 888; Mitchell v. Davis, Tex. Civ. App., 205 S.W.2d 812, 12 A. L. R.2d 1042, 1045.

Pursuant to section 232.7 the petition was set down for hearing and notice ordered served upon June and Mrs. Withem. The presumption is the required notice was served. In re East Minors, supra, 143 Iowa 370, 379, 122 N.W. 153; King v. Sears, 177 Iowa 163, 167, 158 N.W. 513. In any event June appeared in person and with her present attorneys. The Withems and Teresa appeared in person. See section 232.13; DeKay v. Oliver, Judge, 161 Iowa 550, 554, 143 N.W. 508. Apparently the Withems were represented by the county attorney. The probation officer (see section 231.8) was also present.

As required by section 232.13 the court tried the cause in equity. Some two and one-half months later, apparently after careful consideration, the district court found, as above indicated, Teresa was a neglected child within the meaning of section 232.2 and her best interests and welfare can be promoted only by permitting her to remain in the custody of the Withems. From judgment and decree pursuant to these findings June has appealed to us.

I. Our review is de novo. Savery v. Eddy, 242 Iowa 822, 837, 842, 45 N.W.2d 872, 880, 48 N.W.2d 230, 231; In re Dependency of Stamp, 198 Iowa 1136, 1137, 199 N.W. 1007. However the trial court's findings are entitled to substantial weight (much weight, according to some of our decisions). Finken v. Porter, 246 Iowa 1345, 1347, 72 N.W.2d 445, 446, and citations; Blundi v. Blundi, 243 Iowa 1219, 1226, 55 N.W.2d 239, 243, and citations.

II. We first consider whether Teresa was a dependent or neglected child within the meaning of Code chapter 232. Under

section 232.2 a "dependent" or "neglected child" means "any child who, * * *: 1. Is destitute, homeless or abandoned. 2. Is dependent upon the public for support. 3. Is without proper parental care or guardianship, * * *." We are required to construe chapter 232 liberally "to the end that its purpose may be carried out." Section 232.39.

Clearly Teresa was without proper parental care or guardianship when the Withems took her. It is without dispute "Her crib had not been cleaned out for several days, she was soaking wet, had rash on her from one end to the other and there was clabbered milk in the bottle." On at least one occasion the baby was playing in her own filth. June and her four children were living in two rooms, without bathtub, hot water or indoor toilet. Her oil burner blew up and the water pipes froze in midwinter. June was on relief and unable to repair the stove or pipes. As previously stated, care of the four children was too much for her.

Under these circumstances, with June's consent, the Withems charitably took Teresa to their home where she has now lived about six years and eight months. During all this time June has contributed only about $200 to the child's support. Most of this came from social security payments June received before August 1952. During one period of six months the Withems did not know where June was living. So far as shown June made no demand for the return of Teresa until shortly before this action was commenced. By then the Withems had become strongly attached to the child and she to them. June must have known of these growing bonds of affection.

It has been suggested Teresa was not a dependent or neglected child at the time of trial because of the excellent care she has received from her aunt and uncle. But this care has not been parental care. Under a statute substantially identical to ours it has been held a child does not have " 'proper parental care or guardianship' " who does "not have proper care by his natural parents." In re Davis, 206 Okla. 405, 408, 244 P.2d 555, 558.

A case very similar to this on the facts *and the procedure followed* is In re Reed, 189 Okla. 389, 117 P.2d 503, where a mother left her child with complainant about five and one-half

years before the latter filed his petition in county (juvenile) court asking that the child be declared dependent and neglected, made a ward of the court and legally placed in his home. During the five and one-half years the mother paid complainant, in all, about $100 for the child's support. The court rejected the argument the child was not dependent because of the care complainant furnished her. The opinion says at page 392 of 189 Okla., page 505 of 117 P.2d: "The mere fact that it was enjoying proper care in the home of others and was therefore not a homeless, destitute, or abandoned child does not mean that it was receiving proper parental care or guardianship. * * *

"Protestant takes the position that since third parties, or 'other persons', were properly caring for the child, it could not be said to be neglected under the provision relating to proper parental care. But this cannot be a proper view where, as here, the child is placed with others and the obligation to pay for its upkeep is abandoned by the parent."

In re Reed is followed in In re Davis, supra, 206 Okla. 405, 408, 244 P.2d 555, 558, 559, above referred to, which states: "The mere fact that he was enjoying proper care in the Christian home of Mr. and Mrs. Roberts * * * does not mean that this child was receiving proper parental care and guardianship." See also Argabright v. Christison, County Judge, 142 Okla. 243, 286 P. 347, 348, where the child had lived with petitioner nearly four years before the petition in juvenile court was filed.

In In re Olson, 111 Utah 365, 371, 180 P.2d 210, 213, the child had lived in her grandfather's home eight years before the petition was filed. It was held the child was nevertheless a neglected child within the meaning of the Utah statute. The opinion says: "The fact that some third person may be providing care for a child by reason of the neglect of the parent to do so, does not deprive the juvenile court of jurisdiction to inquire into the welfare of such child and to fix responsibility and determine proper custody for the child within the scope of the statutory authority granted to the court."

In Ex parte Day, 189 Wash. 368, 380, 65 P.2d 1049, 1054, a mother placed her three children with friends whom it was stipulated were excellent people to care for them. When, after the

mother died, the father demanded one of the children, the friends who were caring for her petitioned the juvenile court to make such order for her custody as should seem proper. The court held, under a liberal interpretation of the law, the children were dependent within the scope of the statute and proper subjects for the care of the court.

43 C. J. S., Infants, section 98a, page 229, states: " 'Dependent child' has been said to be the term applied to normal children who must be supported by others than their natural guardians; a dependent child is a child who is dependent on another, or on the public, for support."

The decisions above-cited and others make it clear courts generally give a liberal interpretation to the statutory definition of dependent or neglected children. (See 43 C. J. S., Infants, section 98a, page 230.) Especially is this true where the child's best interests call for such interpretation.. The court's paramount duty when a question of child custody is involved is to act for the best interests of the child. State v. Stemmler, 241 Iowa 417, 425, 41 N.W.2d 21, 25. See also Pugh v. Pugh, 133 W. Va. 501, 56 S.E.2d 901, 15 A. L. R.2d 424, 429, and citations.

Illustrative of the liberal interpretation to which we have just referred are the decisions that hold a child is dependent or neglected within statutory definitions where its parents refuse, on religious grounds, to permit a blood transfusion or other medical treatment which appears probably necessary to save the child's life. See People ex rel. Wallace v. Labrenz, 411 Ill. 618,. 104 N.E.2d 769, 30 A. L. R.2d 1132, and Annotation 1138; Morrison v. State, Mo. App., 252 S.W.2d 97; Mitchell v. Davis, supra, Tex. Civ. App., 205 S.W.2d 812, 12 A. L. R.2d 1042, and Annotation 1047. Also illustrative of the liberal construction given statutes defining a dependent child is In re Lundy, 82 Wash. 148, 143 P. 885, Ann. Cas. 1916E 1007.

Mitchell v. Davis, supra, at page 814 of 205 S.W.2d, page 1045 of 12 A. L. R.2d, approves this statement: "* * * pleadings are of little importance in a child custody hearing and that the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of the children should be unhampered by narrow technical rules."

■■ We conclude, under a liberal construction of section 232.2, Teresa was a dependent or neglected child in that she was without proper parental care or guardianship. The trial court reached the conclusion she was a dependent or neglected child upon somewhat different reasoning. We need not determine the soundness of such reasoning. As stated, the cause is triable de novo here. And even if the reasons by which the trial court reached a correct decision were erroneous it would not entitle appellant to a reversal. Erroneous reasons for a right decision are deemed not prejudicial. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N.W.2d 775, 779, and citations; Ruble v. Carr, 244 Iowa 990, 999, 59 N.W.2d 228, 233, and citations; Merkel v. Merkel, 247 Iowa 495, 498, 73 N.W.2d 75, 76.

Nothing herein is contrary to In re Dependency of Stamp, supra, 198 Iowa 1136, 199 N.W. 1007, cited by appellant. There the child was at all times living with and receiving excellent care from her mother to whom custody had been given by divorce decree.

III. Section 232.21(2) provides the court may commit any neglected, dependent or delinquent child "to some suitable family home or allow it to remain in its own home." As we observed at the outset, there is little doubt Teresa's best interests and welfare will be promoted by permitting her to remain in the home of her aunt and uncle. In reality that is her own home. Certainly it is a "suitable family home." We agree with the trial court she should remain there.

■ Appellant concedes what we have held many times that the controlling consideration in all cases involving child custody is the welfare and best interests of the child. Also that a parent's right of custody is only presumptive, not conclusive. It may be relinquished by abandonment, contract or otherwise and will not be enforced where the best interests and welfare of the child call for other care and custody. See Finken v. Porter, supra, 246 Iowa 1345, 1348, 72 N.W.2d 445, 446, and citations. Earlier decisions to like effect are In re Guardianship of Lally v. Fitz Henry, 85 Iowa 49, 52, 53, 51 N.W. 1155, 16 L. R. A. 681, and citations.

Appellant also concedes Teresa has been well provided for

by her aunt and she has love and affection for the child. Nothing derogatory to the Withems or their home appears. The mother's claim to custody is largely based on her presumptive right as a surviving parent. The correct approach is from the standpoint of what is best for the child.

One matter entitled to consideration is that June and her present husband are nonresidents of Iowa and propose to take Teresa out of the state. At least twice we have approved the statement it is against the policy of the law to permit the removal of a child from the jurisdiction unless its welfare would be better subserved thereby. Jensen v. Jensen, 237 Iowa 1323, 1330, 25 N.W.2d 316, 320; Blundi v. Blundi, supra, 243 Iowa 1219, 1225, 55 N.W.2d 239, 243. See also Paintin v. Paintin, 241 Iowa 411, 416, 41 N.W.2d 27, 30, 16 A. L. R.2d 659; Pugh v. Pugh, supra, 133 W. Va. 501, 56 S.E.2d 901, 15 A. L. R.2d 424, 429, 430, and annotation 432; 67 C. J. S., Parent and Child, section 12h, page 667.

Another consideration of importance, already mentioned, is the strong attachment that has developed between the Withems and the child. June's long inability to care for her properly and lack of effort for about five years to obtain the child's custody naturally contributed to the strengthening of ties between her and the aunt and uncle. It would not be for Teresa's welfare to transplant her now. To do so would be a change from conditions proven to be beneficial to her. It would be in the nature of an experiment which should not now be made. See in this connection Blundi v. Blundi, supra, 243 Iowa 1219, 1230, 55 N.W.2d 239, 245, and citations; Paulson v. Windelow, 236 Iowa 1011, 1017, 20 N.W.2d 470, 473.

Perhaps we should add that both sides have fully argued the question whether the award of custody to the Withems is for the child's best interests and the second of the two grounds for reversal is the claimed error in the trial court's affirmative finding on this point.—Affirmed.

OLIVER, C. J., and BLISS, THOMPSON and LARSON, JJ., concur.

WENNERSTRUM, SMITH and HAYS, JJ., dissent.

PETERSON, J., takes no part.