STATE OF IOWA ex rel. JOSEPH GERING (IN RE JO ANN BIRD), appellee, v. RICHARD ELMER BIRD, appellant.

No. 49569.

(Reported in 96 N.W.2d 100)

APRIL 8, 1959.

George E. Flagg and Ted Sloane, both of Des Moines, for Richard E. Bird, appellant.

Ralph Bellizzi and Richard Strickler, both of Des Moines, for Joseph Gering, appellee.

W. Stevenson Glanton, of Des Moines, guardian ad litem for Jo Ann Bird, minor.

PETERSON, J.—Jo Ann Bird was born in Des Moines on October 8, 1954. Her mother departed this life at the time she was born. Her father was in the military service in Germany,

but arrived in Des Moines in time for the funeral. He asked the maternal grandparents, Mr. and Mrs. Joseph Gering, if they would take Jo Ann into their home and care for her. The father, Richard Bird, had several months remaining on his Army service. After his discharge he came back to Des Moines and lived in the Gering home until early in 1957. He then left without telling Mr. and Mrs. Gering where he was going. They discovered through other sources that he had gone to California and had remarried.

On March 5, 1957, Joseph Gering filed in the District Court in Polk County, Juvenile Division, a petition with reference to Jo Ann, alleging she was a dependent and neglected child under section 232.2, 1958 Code of Iowa, and praying that her case be heard by the court and custody be established.

The father, Richard Bird, returned to Iowa, and filed answer in the proceedings. He first asked that custody of Jo Ann be given to his sister Gladys Mae Tavenner and her husband pending adoption and that he had given written consent to his sister as to adoption of the child. However, he also filed application that he be given custody.

Custody was granted by the trial court to Mr. and Mrs. Gering, the maternal grandparents. Richard Bird, the father, has appealed.

The assignments of error are that Jo Ann was not a delinquent and dependent child; especially since social security payments, of $59.20 per month, were paid to the maternal grandparents.

Section 232.2 provides: "The term 'dependent child' or 'neglected child' shall mean any child who, for any reason: * * *

"3. Is without proper parental care or guardianship * * *."

When Mrs. Bird departed this life at the time of the birth of Jo Ann she was left without parental care as far as her mother was concerned. When Richard Bird, her father, left and went to California without advising her grandparents as to his leaving or as to his address she became a child without parental care as far as the father was concerned. McKay v. Ruffcorn, 247 Iowa 195, 73 N.W.2d 78; State ex rel. Gilman v. Bacon, 249 Iowa 1233, 91 N.W.2d 395.

McKay v. Ruffcorn, supra, was tried under the provisions of chapter 232, the same as the case at bar. Teresa Ruffcorn was about seven years of age. Her father was killed in an automobile accident. She was the youngest of four children. The mother, June, left her with her sister, Mrs. Withem, when she was nine months of age. After Mr. Ruffcorn's death his widow, June, spent most of her time in Omaha, Nebraska. During the years when she left Teresa with her aunt and before the commencement of that action she had been married and divorced twice. At the time of the action she was living with her third husband, Mr. Andersen, in a three-room apartment in Omaha. The question was raised in that case, as it has been in this case, as to whether or not chapter 232 is a proper forum for the trial of a case of this type. We held it was in the following words: "Clearly Teresa was without proper parental care or guardianship when the Withems took her."

Throughout more than six years the mother, June, only contributed about $200 to the child's support. The remainder of expense and care was furnished by Mr. and Mrs. Withem.

The question was raised in the McKay case, the same as it is in this case, that because Teresa was receiving excellent care from her aunt and uncle she was not a "neglected child." In the case at bar the claim is made that since Jo Ann is receiving excellent care in the home of her grandparents and they are receiving $59.20 in social security each month toward her care that she is not a dependent or neglected child. We stated in McKay v. Ruffcorn, supra (page 199 of 247 Iowa), as to this matter: "Under a statute substantially identical to ours it has been held a child does not have 'proper parental care or guardianship' [10 Okla. Stat. 1951, section 101] who does 'not have proper care by his natural parents.'"

In the McKay case we cite and analyze at some length the following cases sustaining the theory: In re Davis, 206 Okla. 405, 244 P.2d 555; In re Reed, 189 Okla. 389, 117 P.2d 503; In re Olson, 111 Utah 365, 180 P.2d 210; Ex parte Day, 189 Wash. 368, 65 P.2d 1049.

The following statement is quoted with approval from 43 C. J. S., Infants, section 98a, page 229: "'Dependent child' has been said to be the term applied to normal children who

must be supported by others than their natural guardians; a dependent child is a child who is dependent on another, or on the public, for support."

When Richard came home from the service and came to the Gering home and lived for about a year and a half he did practically nothing in connection with the care of Jo Ann. The grandparents had been allotted from social security the sum of $59.20 per month by reason of her mother having worked prior to her marriage. He indulged in drinking intoxicating liquor to excess. He testified since his second marriage he has quit drinking liquor.

The grandmother and grandfather had the full responsibility of her care during the period from her birth in 1954 until the trial of the case in 1957.

A somewhat unusual situation pertains to the pleadings and the argument and the appeal. The father, Richard Bird, alleged in his answer that he had signed a consent to adoption in favor of his sister Mrs. Tavenner and asks the court that the custody of Jo Ann be granted to her. Yet he filed an application, has appealed the case, and argument of his counsel now is that he wants the custody of Jo Ann.

Mr. and Mrs. Tavenner had been married for eighteen years. They have no children. When Richard came home from the service at the time of the death of his wife there was some discussion as to whether Jo Ann should be left with her maternal grandparents or with Mrs. Tavenner. Richard decided he would like to leave her with his wife's mother and father. He said they had lost their daughter and he felt they should have the little girl. At the time there did not seem to be any feeling in the matter on the part of Mrs. Tavenner. However, thereafter, she never paid any attention to her little niece and saw her only once during the time she was at the Gering home. She is practically a stranger to the child.

Other children in Mrs. Gering's family have grown to manhood and womanhood and left home, but there is still one little boy, Rickey, in the home, who is eight years of age.

In its findings and decree the trial court referred to Richard's request that adoption of Jo Ann be granted to Mrs.

Tavenner, her aunt, yet its findings of fact were largely based on a comparison between the homes and circumstances of the grandparents and the father.

■ The decision of the trial court is to receive great weight in this court in connection with custody cases. Pyle v. Stone, 185 Iowa 785, 171 N.W. 156; Westendorf v. Westendorf, 187 Iowa 659, 174 N.W. 359; Risting v. Sparboe, 179 Iowa 1133, 162 N.W. 592, L. R. A. 1917E 318; Rust v. Trapp (Iowa, N. O. R.) 201 N.W. 565.

■ Our review of this case is de novo. Savery v. Eddy, 242 Iowa 822, 45 N.W.2d 872, 47 N.W.2d 230, 48 N.W.2d 230; In re Dependency of Stamp, 198 Iowa 1136, 199 N.W. 1007; McKay v. Ruffcorn, supra.

■ In cases of this type, as well as in habeas corpus cases, the welfare of the child is to be given first consideration. Risting v. Sparboe, supra; Joiner v. Knieriem, 243 Iowa 470, 52 N.W.2d 21; Finken v. Porter, 246 Iowa 1345, 1347, 72 N.W.2d 445; Durst v. Roach, 245 Iowa 342, 343, 62 N.W.2d 159; Herr v. Lazor, 238 Iowa 518, 28 N.W.2d 11.

■ The court appointed a guardian ad litem to appear for Jo Ann and make report to the court. Here again there is a contradiction in the situation because the guardian ad litem reported to the court only as to the Richard Bird home and the Joseph Gering home. He made no report as to the Tavenner home. As to the Gering home he reported that they lived in a four-room house which was clean and well kept, but not modern. There are four people living in the home; Mr. and Mrs. Gering, Jo Ann and the little son, Rickey. Jo Ann sleeps in a baby bed in the same room as her grandparents and Rickey sleeps in the living room. Mr. Gering is fifty years of age and is gainfully employed at a salary of $65 per week. Jo Ann appears to be happy and healthy and the eight-year-old son of Mr. and Mrs. Gering seems to get along well with her.

Ten witnesses appeared for Mr. and Mrs. Gering. They were neighbors, friends, relatives of Mr. and Mrs. Gering and some relatives of the father; Richard Bird. They all testified that the home was neat and clean; that the little girl was happy and contented and that she was treated with affection and in every respect as a child of their own. The following testimony

of Sarah Jane Jorgensen is typical of the testimony of the witnesses with reference to the work of Mrs. Gering and the situation of Jo Ann in the home:

"Q. Tell the court what observations you have made, if any, regarding how Mr. and Mrs. Joseph Gering have taken care of or treated the baby, Jo Ann Debra Bird? A. Well, they took the baby home at the end of five days when she got out of the hospital, and started in like any other mother and father and raised her as their own. They have taken care of her, taken her to the doctor when she was sick, and just handled everything the same as if it was their own child. Mrs. Gering did all of the walking at night when the baby was sick, and that first two months it was constantly twenty-four hours a day. * * * Q. Have you observed whether or not the Gerings have shown any affection for the baby? A. Yes, of course. Q. Is the baby well fed? A. Always. Q. Kept clean? A. Always. Q. Does Mrs. Gering keep a clean home? A. Yes, she does. Q. What kind of woman is Mrs. Gering? By that, I mean is she the type of woman who does a lot of running around to shows or does she confine herself to her home? A. I would say she very much confines herself to her home for the last two and a half years. I have never known her to go to a show. She has never gone to any PTA meetings without a baby sitter."

The father, Richard Bird, testified under cross-examination as follows:

"Q. Isn't it true, Richard, that Mr. and Mrs. Gering have been taking care of the baby? A. Yes. Q. Taking care of Jo Ann, as a father and mother would take care of a child? A. Yes. Q. They fed it? A. Yes. Q. They kept it clean? A. Yes. Q. They made a nice home for the baby? A. Yes. * * * Q. Richard, state to the court whether or not Jo Ann Bird, the baby, is in good hands at the present time? A. She is."

The trial court found that it was for the best interest and welfare of Jo Ann that she remain in the permanent custody of Mr. and Mrs. Joseph Gering, the maternal grandparents, and he appointed them as her guardian. He also provided in his order that she be not adopted at this time by Mr. and Mrs. Gering.

Since October 8, 1954, Jo Ann has been in the home of her maternal grandparents. The record is overwhelming that she has had proper care, attention and affection throughout the years. She has known no other home. There is nothing in the record as against Mr. and Mrs. Tavenner. However, they have never had children and she would be placed in a new and strange home and under the circumstances this would not be advisable.

Apparently the father is now trying to claim, through this appeal, that he should have the little girl in his home, where he is established with his second wife and another little child of theirs. We also hold that this is not for the best interest of Jo Ann. While a parent has a presumptive right to a child this is not conclusive. The rule of the best interest of the child has priority ahead of the presumption in favor of a parent. In the following four cases we have decided as against the parent; in two cases in favor of aunt and uncle and in two cases in favor of grandparents: Jensen v. Sorenson, 211 Iowa 354, 233 N.W. 717; Risting v. Sparboe, Joiner v. Knieriem and Durst v. Roach, all supra.

The findings of fact and conclusions of law of the trial court are approved, and the case is affirmed.—Affirmed.

All Justices concur.