360 P.2d 486

STATE of Utah, in the Interest of L. J. J., et al., minor children,

Mr. and Mrs. B———, Appellants.

No. 9329.

Supreme Court of Utah.

March 9, 1961.

Callister and Crockett, JJ., dissented.

John A. Hendricks, Ogden, for appellants.

Walter L. Budge, Vernon B. Romney, Salt Lake City, for respondent.

WADE, Chief Justice.

Mr. and Mrs. B——, petitioners in the juvenile court, appeal from the decision of that court refusing to allow a hearing of their petition for the custody of eight minor children. The appellants are the father and mother of six of the children, and Mrs. B—— is the mother of the two older children who were born to her by previous marriages.

On account of excessive drinking by the appellants, on June 20, 1959, the juvenile court made an order declaring all of the children neglected and placed them within the jurisdiction of the juvenile court under the protective supervision of ·the State Department of Public Welfare, but returned them to the custody of the appellants, the natural parents, upon condition that such parents would not drink intoxicating liquor or frequent taverns. Appellants resumed their drinking and a petition was filed in the juvenile court ·to take the custody of the children. :from them, and appellants were served with notice to appear on August

7, 1959, for a hearing on this petition. Instead of appearing at such hearing they took the children and left the state. In December of 1959, the appellants returned with the children to this state, upon which the children were immediately taken into custody by the juvenile court; a hearing was held in the presence of the parents, and the court amended its findings of fact and decree to contain the following provision:

*"That all the parental rights of the father [name omitted] and the mother [name omitted], be and are hereby terminated and said parents are hereby deprived of the custody, control and guardianship of said children.* That the said children shall be placed in the custody, control and guardianship of the Utah State Department of Public Welfare and *said Welfare Department be and are hereby authorized to place said children for the purpose of adoption.* That said children shall remain under the continuous jurisdiction of this court until said adoption is granted by a court having jurisdiction. That said Utah State Department of Public Welfare, upon finding a proposed adoptive home for said children shall submit to this court for its approval, a report regarding the character and social background of said proposed adoptive parents and that said children shall not be placed with said adoptive parents for the proposed adoption until

so authorized by this court." (Emphasis ours.)

On May 23, 1960, the appellants filed a petition for the restoration of the custody of their children to them on the grounds of changed conditions as provided for in Section 55–10–41, U.C.A.1953. Such petition alleged that the parents had conquered their alcoholic problem and definitely had quit drinking alcoholic beverages of any kind, and by reason thereof were able to furnish their children a good home, parental love and affection, and the best of care. The State answered this petition alleging (a) that the court has no jurisdiction to grant the petition; (b) that the mother has had insufficient time to overcome her alcoholic problem; (c) that suitable homes and adoptive parents have been found for the two sets of twins; (d) that the other children were adjusting well in foster homes and asked that the petition be denied. On July 12, 1960, the juvenile court entered an order denying further hearing on these matters and directed the Utah State Department of Public Welfare to proceed with the adoption of the above named children after the expiration of 30 days unless otherwise directed. On the 30th of August, 1960, after the notice of appeal was filed, the juvenile court ordered a stay of all proceedings to adopt the children.

On July 13, 1960, the juvenile court entered a memorandum of decision. Therein it pointed out that since July 6, 1951,

there had been various petitions and proceedings in the juvenile court with reference to the neglect of one or more of these children, and that almost constantly since that time the mother, and later the father, had been before the juvenile court promising to refrain from drinking and to take care of the children; that these promises had invariably been broken; that the children had been left in the custody of the parents until December of 1959, after the parents had removed them from the state and later returned, at which time the court had ordered the children placed for adoption. The court further pointed out that the two sets of twins had been placed by the Welfare Department for adoption in suitable homes; that the other children had been placed in suitable homes and were adjusting themselves to their surroundings; that only about seven months had elapsed since the parents were deprived of the custody of their children, which it pointed out was a rather short period in which to determine whether or not the parents had actually permanently stopped drinking.

Appellants urge that had they been granted a hearing they would have shown that soon after being deprived of the custody of their children, they were inducted into Alcoholics Anonymous and thereupon they had both completely refrained from drinking alcoholic beverages; that they had rented and furnished a home in a good residential area; that the father was steadily employed at a base pay of $88 per week and that they were in a position to furnish their children with good parental care and sustenance. They also claimed that they could produce testimony of a psychiatrist and an AA worker that in their opinion these parents would continue in their sobriety and be good parents to their children.

Section 55–10–41, U.C.A.1953 provides:

"A parent, guardian or next friend of a child who has been committed to any children's aid society or institution, except the state industrial school or the district court, *may at any time file with the clerk of the juvenile court a petition,* verified under oath, *asking for the return of such child to its parents* or guardian, *for the reason that they have reformed or the conditions have changed and that they are fit and proper persons to have its custody and are able to support and educate it.* * * *If,* upon examination of the petition and the reply, *the court is of the opinion that a hearing and further examination should be had, it may,* upon due notice to all persons concerned, *proceed to hear the facts and determine the question at issue.* The court may thereupon order such child to be restored to the custody of its parents or guardian, or to be retained in the custody of the children's aid society or institution, and may direct the proper authorities of

the society or institution to make any other arrangements for the child's care and welfare as the circumstances of the case may require, or the court may make a further order of commitment as the interest and welfare of such child may demand." (Emphasis ours.)

From the foregoing section it is clear that it was proper for the parents to file this petition, and that it was within the sound discretion of the juvenile court whether it would grant a hearing or not. We should reverse the trial court's decision on that question only if we find that it acted arbitrarily or abused its discretion.

Section 55–10–32, U.C.A.1953, provides that no child shall be taken from the custody of its parents without their consent "unless the court shall find from all the circumstances in the case that public welfare or the welfare of a child requires that his custody be taken from its parents * *."

This section, although not determinative in this case because the juvenile court had previously on ample evidence entered an order depriving the parents of the custody of the children here in question, does emphasize and point out that it is the policy of the law not to deprive the natural parents of the custody of their children without careful consideration of the welfare of the children involved.

Furthermore, this court has repeatedly recognized that there is a presumption that it will be for the best interests of the child to be raised under the care, custody, control and supervision of its natural parents. Such presumption is only overcome when the trier of the facts is convinced by the evidence that the welfare of the child requires that the child be awarded to someone other than the natural parents. Thus, the ultimate burden of proof on this question is always in favor of the natural parents and against any other person seeking custody of such child. In addition thereto, this presumption is based on logic, and experience shows generally that parents have more love, devotion and regard for their own children than do other people. Therefore, this fact has evidentiary value which should be considered by the trier of the facts in determining such question.[1]

Also, it is very unusual for a court to attempt to determine facts without hearing all of the evidence available which has a bearing on that question. This is particularly true in a case where the trial court is called upon to determine a complicated

---

1. Bradley v. Miller, 109 Utah 538, 167 P.2d 978; Walton v. Coffman, 110 Utah 1, 169 P.2d 97; Baldwin v. Neilson, 110 Utah 172, 170 P.2d 179; In re Olson (Hardy v. Olson), 111 Utah 365, 180 P.2d 210; Deveraux' Adoption v. Brown, 2 Utah 2d 334, 273 P.2d 185; Fronk v. State, 7 Utah 2d 245, 322 P.2d 397; State in Interest of K——— B———, 7 Utah 2d 398, 326 P.2d 395.

question such as, what will be most beneficial to the child. Ordinarily to refuse to hear all the evidence available on an issue of fact would be a violation of due process of law. However, in this case these children have been under the supervision of the juvenile court, and it has been repeatedly brought to the court's attention that these parents have promised to abstain from the use of intoxicating liquor but have failed to live up to such promises, and the juvenile court has finally permanently deprived these parents of the custody of their children after a complete hearing of the matter. So probably there is no lack of due process of law by the failure of the juvenile court to hear this petition.

Here the petition is based on changed conditions. It alleges that the parents have completely conquered their alcoholic problem and have definitely quit drinking any alcoholic beverages of any kind; that this has been accomplished through the aid of the AA society, and that by reason thereof they are now able to furnish their children a good home, parental love and affection and the best of care. If this were only a question of the parents reaffirming their vows to overcome their alcoholic problem, which they have broken many times in the past, then the trial court would be well within its discretion in refusing to hear further evidence. But this is not the case. The plaintiffs claim that they have joined the AA society and with its help have completely overcome their drinking habits. They claim that they have not touched alcohol since joining the AA society and that they intend to and will continue to abstain from such drinking in the future. They claim that the husband has now obtained a good job, and that they are living in a desirable home, and that they are desirous and able to provide the children with the necessary care and support.

■ It is not unusual for a person who has for a long period of his life had an uncontrolled drinking habit to completely overcome such habit during the rest of his life. Such a reformation often occurs with the aid of the AA society, which was established for that purpose. In view of these facts, the juvenile court abused its discretion in refusing to allow a hearing on this question. The contention that sufficient time had not elapsed to demonstrate that the parents had overcome these drinking habits has now been eliminated by the lapse of time, and if more time were needed the juvenile court could hold the proceedings in abeyance until it is satisfied on that point.

Whether some or all of these children shall be returned to the parents is a question for the juvenile court to decide after hearing all of the evidence and determining what will be most beneficial to each child. However, since the parents have presented an issue of fact under which the parents probably can make a showing that the

best interests of these children requires that they be reared by their natural parents, the trial court abused its discretion in refusing to give them a hearing. The children need not attend such hearing nor be disturbed in their adjustment to their surroundings unless the juvenile court concludes in view of all the evidence that the best interests of one or more of such children requires a return to the custody of the parents.

Decision reversed with directions that the juvenile court proceed with such hearing in accordance with the view herein expressed. No costs awarded.

HENRIOD and McDONOUGH, JJ., concur.

HENRIOD, Justice (concurring).

I concur and believe that under the circumstances of this particular case the order denying a hearing on the petition for restoration of custody represented an abuse of discretion, and possibly, if carried out, might raise constitutional questions.

On May 23, 1960, petitioners filed their petition, asserting that they had won their bout with alcohol and were prepared to give the children proper care and attention. In what appears to this writer a rather unusual move, the juvenile court, the very next day, on May 24, 1960, while the petition was pending, and before the authorities who had custody of the children had made a reply to the petition as contemplated by Section 55-10-41, U.C.A.1953, signed an order authorizing the welfare department to procure the adoption of two of the children and to report back to the court after the adoption was consummated. This, in and of itself, seems to have violated the letter and spirit of the statute mentioned. The statute required the welfare authorities to reply to the parents' petition within five days. These authorities did not comply with the statute, but chose to reply to the petition, not within five days, but 16 days thereafter on June 8, 1960. I believe that at this juncture, the statute, having been ignored, would not be applicable in this case. It obviously was designed to provide a quick hearing and a quick decision, but the court in this case made its decision denying a hearing on July 12, 1960, fifty days after the filing of this petition.

In addition to the chronology mentioned above, the juvenile court, in its order depriving the parents of custody, specifically retained continuous jurisdiction "until said adoption is granted by a court having jurisdiction." Having done so, without specifying the precise purpose therefor, I am of the opinion that in this particular case inherently was included in such reservation of jurisdiction, a requirement that the least that could be done upon petition for restoration of custody would be to hear the natural parents out in an eleventh hour hope that

it could be established that a sincere effort had been made on the part of the parents to preserve the relationship of parent and child, re-establish confidence in and enjoy the companionship of those who are their own flesh and blood,—and that their mission had been accomplished.

In passing, it is pointed out that the decree depriving the parents of custody recited that they "be and are hereby deprived of the custody, control and guardianship of said children and all of their parental rights be and are hereby terminated." In the light of the court's retention of jurisdiction, it seems to me that such language is as consonant with an interpretation that the parents were "temporarily" deprived of custody as is an interpretation that they were "permanently" deprived of such custody,—the latter interpretation having been placed on such language by Mr. Justice CALLISTER in his dissent. Being subject to more than one interpretation, it would seem that every reasonable doubt should be resolved in favor of the natural parent-child relationship, justifying at least another look at the situation, to determine if custody should or should not be restored.

CALLISTER, Justice (dissenting).

I dissent. The majority opinion concedes that the juvenile court had "previously on ample evidence entered an order depriving the parents of the custody of the children here in question." It correctly holds that the granting or refusing of a hearing under Section 55–10–41, U.C.A.1953, rests within the sound discretion of the juvenile court, and that this court should not reverse the juvenile court's decision in this regard unless it acted arbitrarily or abused its discretion.

Thus, the sole question presented to this court is whether or not the juvenile court in the instant case abused its discretion in refusing to grant a hearing after it had entered a proper order depriving Mr. and Mrs. B——— permanently of the custody of the eight minor children. If any reasonable person could have so ruled, then the discretion is not abused. In order to properly resolve this question, the following chronological summary of the record should be considered:

(a) In July, 1951, the juvenile court determined the children (two in number at that time) to be neglected and dependent because of the mother's constant use of alcohol and frequenting of taverns. The court retained jurisdiction of the children, but allowed the mother to have custody upon her promise to reform her ways.

(b) In August, 1957, the mother and her children (six in number at this time) again appeared before the juvenile court. It appeared that the mother had married Mr. B——— since the first hearing, but they were separated and living apart. The court again determined that the children

were neglected and dependent because of the mother's frequent intoxication, sometimes in the presence of the children. Again the court, still retaining jurisdiction, permitted the mother to retain custody of the children upon her promise to mend her ways.

(c) In April, 1958, a probation officer petitioned the juvenile court for a rehearing of the matter, because the mother was continuing her drinking habits and neglecting the children. This petition was dismissed upon the grounds that the mother was pregnant, not drinking, and was reunited with Mr. B———.

(d) In June, 1959, pursuant to another petition by the Welfare Department, another hearing was held (this time the children were eight in number). Again, the court determined the children to be neglected and dependent; this time, because of the drinking of Mr. and Mrs. B———, oftentimes in the presence of the children, their frequenting of taverns, the lack of medical care for the children, and the unkempt and unsanitary conditions of the children. Furthermore, it was found that the children were inadequately clothed and were allowed to wander about without any supervision. Again the court retained supervision of the children but permitted Mr. and Mrs. B——— to continue custody upon their promise to abstain from alcoholic beverages and frequenting taverns.

(e) On August 4, 1959, the Welfare Department again petitioned the juvenile court for another hearing in the interest of the children. The hearing was set for August 7, 1959, but Mr. and Mrs. B———, after being served with notice thereof, absented themselves and the children from the state of Utah.

(f) Mr. and Mrs. B——— returned to this state and a hearing was held on December 1, 1959. At this hearing it was ascertained that Mr. and Mrs. B——— had failed to live up to their promises relative to the abstinence of liquor and that Mrs. B——— had been discovered nude, in an intoxicated condition in the presence of two of her children, in the apartment and presence of her brother-in-law. At the conclusion of this hearing, and on December 10, 1959, the juvenile court entered its order depriving Mr. and Mrs. B——— permanently of the custody of the children and authorized the Welfare Department to place them for adoption. The propriety of this order is not assailed, even by the majority opinion.

(g) On February 11, 1960, the juvenile court received a written report from the Welfare Department advising it that suitable adoptive parents had been found for two of the children. On May 17, 1960, a similar report was received with regard to two more of the children.

(h) Finally, on May 23, 1960, Mrs. B——— filed a petition pursuant to Section

55–10–41, U.C.A. requesting a hearing. It is from the denial of this petition that this appeal is prosecuted.

The petition last mentioned alleged "That your petitioner, the mother of the children, has overcome her alcoholic problem and she and her husband are in a position to give the children good care and attention."

From the foregoing, it is difficult, to say the least, to conclude that the juvenile court acted arbitrarily or abused his discretion in refusing to grant a hearing. For a period of almost nine years the mother and the children had been under the supervision of the court and the Welfare Department. The court, during this period, not only had the opportunity to observe the family, but also had the benefit of the advice and reports of trained social workers. It had experienced time and again the broken promises of the mother and Mr. B———. Time and again it had extended an opportunity to reform and rehabilitate—all to no avail.

The juvenile judge filed a memorandum at the time of denying the petition for a hearing. After reviewing the history of the matter, he stated, among other things: "Even assuming that the mother during the requested hearing proved that she had not been intoxicated since the last hearing, it is doubtful that it would be in the best interest of the children that they be returned to her ˙ * * *. It would be in the best interest of the children that others be given the responsibility and privilege of rearing the children. Any longer delay would be injurious to the children."

If the circumstances here disclosed do not constitute sufficient justification for the denial of a hearing by the juvenile court, then I am made to wonder wherein is its discretion, and under what circumstances could such a denial be justified.

In its opinion the majority places emphasis upon the fact that Mr. and Mrs. B——— have joined Alcoholics Anonymous. That this organization is very worthy and in many instances effective, I have no doubt. However, the membership of Mr. and Mrs. B——— in this organization is to be gleaned only from the petitioners' brief on appeal and does not appear in the record. Even if this fact had been brought to the attention of the juvenile court, it would have little bearing upon the question of its exercise of discretion.

No decisions of this court have been found construing the extent of discretion of a juvenile court in allowing or not a hearing under Section 55–10–41, U.C.A. 1953. However, it would seem that its discretion is analogous to that of a trial court in ruling upon a motion for a new trial. This court cannot exercise the discretion which the juvenile court might, and in some cases ought to have exercised. We cannot, under the guise of reviewing an abuse of discretion by the juvenile court, substitute our judgment for that of the

juvenile court. Every presumption should be indulged in favor of the proper exercise by the juvenile court of its discretion in granting or denying a hearing in these cases.[1]

This court should take a realistic view of such situations and recognize that unless the juvenile court is in fact allowed some latitude of discretion, it will be practically helpless in placing children found under such unfortunate circumstances, and the Department of Public Welfare will be required to bear the whole burden of their upbringing while irresponsible parents continue to have more children, and to continue in their dissolute ways, and leave the responsibility of their care to others. On the other hand if the juvenile judge is clothed with some discretion and authority, the children can be placed, as has been done in this case with four of the children, where they may have a more wholesome well-adjusted life with a promise to build lives of that character for themselves and their families; whereas, failure to allow the court such prerogative tends to keep the situation unsettled and to disturb it so that permanent placements cannot be made.

I would affirm the ruling of the juvenile court.

CROCKETT, J., concurs in the dissenting opinion of Mr. Justice CALLISTER.

1. See James v. Robertson, 39 Utah 414, 117 P. 1068; King v. Union Pac. R. Co., 117 Utah 40, 212 P.2d 692.