In re DAVIS.

No. 35077.   April 29, 1952.

*244 P. 2d 555.*

Welch & Welch and Sam Y. Colby, Madill, for plaintiff in error.

James D. Payne, Ardmore, for defendants in error.

GIBSON, J. This is a companion case to In re Adoption of Davis, 206 Okla. 403, 244 P. 2d 554, this day decided.

On September 14, 1946, one Virgil R. Straughn, the undersheriff of Carter county, Oklahoma, filed his petition in the county court, alleging that Marvin Lee Davis, two years of age, was a dependent and neglected child; that he was then in the custody of the Child Welfare Department; that William Davis was the father of the child, and resided in Norman, Oklahoma, and that the child had no legal guardian known to petitioner. On the same day an order was issued by the county judge finding that Marvin Lee Davis was a dependent and neglected child; that

his parents were both confined in a state institution for treatment, and ordering that he be placed in the custody of the Division of Child Welfare of the Department of Public Welfare of the States (hereafter referred to as "Department"), and further that said order should remain in force and effect until modified or set aside by the court.

The Department placed the child in the custody of Herman C. Roberts and Ruth Roberts, his wife, who were paid the sum of $20 per month by Carter county for the care of the child. This arrangement stood for nearly four years.

On July 28, 1950, the Department filed a supplemental petition pleading the former order of the court; that from the date of the order the child had received care and support in its foster home and was still a dependent child; that it would be to the best interests of the child if he be placed with some suitable person for the purpose of. finding a suitable home for adoption, and that the parents and all other persons should be judicially deprived of the care, custody and education of the child. Both parents were served with process, and the trial of this case was had in August, 1950. William L. Davis, the father of the child, appeared and contested the action, but the mother made no appearance.

The trial court held that, subsequent to the placing of the boy with the Department, the natural parents had at no time evidenced a parental interest in his welfare and had not contributed materially to his support; that the father offered no suitably proper plan for his welfare; that since being placed with the Roberts family he had been properly cared for and had received proper guidance; that the allegations of the supplemental petition were true, and that the parents of the child were judicially deprived of custody and control of the child. Mr. and Mrs. Roberts were awarded permanent custody of the dependent and neglected child and were authorized to adopt him, as provided in the statutes.

William L. Davis, the father, presents this appeal on the sole ground that the order and judgment of the trial court depriving him as the natural father of the custody and control of his minor son and awarding such custody and control to the Roberts family is not sustained by sufficient evidence and is contrary to the evidence.

No question is raised as to the character of the foster parents nor as to their financial ability to continue furnishing the minor with a good home.

The test of the correctness of the court's judgment is to be determined by ascertainment of the status and situation of the parties at the time the case was decided, having the primary regard for the welfare and best interests of this minor child, who was then about 7 years of age.

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare * * *." 30 O. S. 1951 §11.

In Osburn v. Roberts, 197 Okla. 206, 169 P. 2d 293, this court specified, in detail, the rules of law which govern the decision in cases involving the custody of children and cited numerous cases sustaining such rules. Therein we said:

"In deciding cases of this nature there are certain rules of law, urged by the parties, that should be kept in mind: (a) Since the trial judge has a better opportunity to observe the parties and witnesses, he is in a better position to know what is best for the child than is this court from a review of the record, and his finding will not be disturbed unless it is clearly against the weight of the evidence or is contrary to law; (b) there are three rights or interests that are to be given consideration in the following order of importance: (1) that of the child, (2)

that of the parent, and (3) that of those who have for years discharged all the obligations of parents; (c) when asked to take the custody from those who have for a considerable period of time nurtured and cared for the child and to restore it to the parent, it is proper for the courts to consider the ties of love and confidence that have grown up between the child and its foster parents and whether it is best for the child not to disturb that relationship; (d) children are not, like chattels, subject to an irrevocable gift, barter or sale, though the fact that a parent has relinquished custody of his child to others should be given due consideration; (e) unless the welfare of the child requires it, a parent will not ordinarily be denied its custody unless the parent is shown to be unfit to have its custody; (f) each such case must be determined upon its own peculiar facts and circumstances."

With these legal principles before us for guidance, we now turn to the facts of this case as revealed by the record.

At the time in 1946 when this child, by order of the county court, was adjudged to be a dependent and neglected child and was placed in the custody of the Division of Child Welfare of the State Department, its parents had both been committed as insane people to the Central State Hospital at Norman, Oklahoma. After confinement of about a year the appellant was discharged. A few months later the mother was discharged. Although served with process she did not appear at the trial. These parents did not re-establish a home or live together. The wife obtained a divorce and remarried. At the time of the trial appellant had not seen her in more than two years. It is apparent that so far as the mother is concerned she has abandoned her son.

The father testified that he was cured of his affliction; that after leaving the hospital he made very little money, working at odd jobs in 1947, 1948 and 1949. He had a high school education and one year in college and was a practical, but not a graduate, engineer. Beginning in the early part of 1950 he had begun making money and had accumulated certain engineering equipment which he valued at $3,000. He had been elected county surveyor of Marshall county, where he was residing. The trial was held August 18, 1950. The record of the Department revealed that the father had contributed the sum of $10 towards support of his son since the Department had placed the boy in custody of the Roberts family in September, 1946. He gave the boy $5 at one Christmas. He testified that he loved his son and that he now was financially able to provide for him; that he had made arrangements to place him in the care of Mrs. Griffin, a widow, 57 years old, and was to pay her $60 per month for care and support of the child; and that he was then earning about $300 per month. The father himself was then living with his own father and brother about one-half block from the home of Mrs. Griffin.

Although Mr. Roberts told him that he could visit the boy at any time, it had been about six months since he had seen the child.

Mrs. Griffin testified concerning the agreement to care for the child and said that it had been twelve years since she cared for children; that her own two children had died in infancy. She had a six room home and the boy would have a room of his own and would go to school. She said the arrangement for care of the child was a business proposition with her. Several witnesses, including officials of Marshall county, testified as to the good character of Mr. Davis and that they believed he would take good care of the child.

Herman C. Roberts is a carpenter, 47 years of age. The boy calls him "Daddy". Mrs. Roberts is a school teacher, and the boy will be attending school. They are church members and the youth attends with them and goes to Bible school. In the four years of his care they have grown attached to him, and desire permanent custody. In the four years of their custody the

father had visited his son five or six times.

A review of the testimony of Department employees as to visits with the boy and with the father and the records of Department funds is not necessary in our decision.

Contests as to the custody of minor children usually arise in divorce actions. This is not such an action. It is an action, authorized by statute, for the permanent custody of a dependent and neglected child. 10 O. S. 1951 §101, in part, provides:

"* * * For the purpose of this Article the words 'dependent child' and 'neglected child' shall mean any male child under the age of sixteen years and any female child under the age of eighteen years who for any reason is destitute, homeless or abandoned; or dependent upon the public for support; or has not the proper parental care or guardianship; * * *."

Under this record, at the time of trial, the child was both a "dependent" and a "neglected" child as defined in the statute. He was under the age of sixteen years; he was dependent on the public for support; he did not have proper care by his natural parents and except for the charity provided by the State of Oklahoma for its care of neglected and dependent children, this child was destitute, homeless and abandoned. A contribution by a parent, of $10 in four years, left the child a dependent child. The promises and plans of the father as to future care did not change or alter the status of the child at the time the cause was tried and the judgment rendered. The mere fact that he was enjoying proper care in the Christian home of Mr. and Mrs. Roberts and, therefore, was not homeless, destitute and abandoned in fact, does not mean that this child was receiving proper parental care and guardianship. In re Reed, 189 Okla. 389, 117 P. 2d 503.

In rendering his judgment it is probable that the trial court was impressed, as this court is impressed, with the conviction that the appellant was not entirely sincere in his profession of love for his child, when he had not visited the child in six months and when he admits earning $300 per month and having, in eight months of 1950, accumulated equipment for the practice of his profession of a value of $3,000, but had not seen fit to contribute any sum whatsoever to the support of his son. He had not given the boy a Christmas present at the preceding Christmas nor a present on the boy's last birthday. These facts were established by his own admissions.

The trial court heard the testimony of the witnesses and had before him the contesting parties and was familiar with all of the surrounding circumstances, and was in position to determine what was for the best interest of the child, and his judgment will not be disturbed on appeal where it is not shown that the judgment is against the clear weight of the evidence.

In his reply brief appellant says that there is another compelling reason for the reversal of this cause in that the Department was the only adverse party in the lower court in this cause; that Roberts and wife had appeared only as prospective adoptive parents and that Department had failed to file a brief herein. Appellant then cites Miles v. Bird, 41 Okla. 428, 138 P. 789, and other cases wherein we have said:

"Where the plaintiff in error has filed a brief, and the defendant in error has filed none, and has given no excuse for his failure, and upon examination of the record it appears that the errors asserted are well founded, this court is not required to search for some theory, or for authorities, that might possibly save the judgment appealed from."

This contention is technical and has no merit and the cases cited are not pertinent to our decisions. About the time of the trial Roberts and wife filed a separate action for adoption of the child. That case comes before us in our cause, In re Adoption of Davis, 206 Okla. 403, 244 P. 2d 554, above mention-

ed. On the appeal of both cases the parties agreed among themselves that the two causes might be consolidated for briefing and disposed of as consolidated. No order of consolidation by this court was obtained. However, both plaintiff in error and defendants in error Roberts and wife have filed briefs covering both cases as though consolidated.

Affirmed.

HALLEY, V. C. J., and JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.