21285.   KENNISON v. LEE *et al.*

ARGUED JULY 10, 1961—DECIDED SEPTEMBER 7, 1961.

156

*Nightingale & Liles,* for plaintiff in error.

MOBLEY, Justice. ■ While many issues, including the constitutionality of section 9(4) of the Juvenile Court Act (Ga. L. 1951, p. 298; *Code Ann.* § 24-2408(4)), are presented, a determination of the question of jurisdiction of the court will decide the case and make unnecessary a ruling on the various other issues raised.

If the court has jurisdiction it is by reason of *Code Ann.* § 24-2408(4) which provides that the juvenile court shall have original jurisdiction concerning any child under 17 years of age living or found within the county: "(4) Who is neglected or living under insufficient and improper guardianship, or who is in need of medical, psychiatric, psychological or other care necessary for his well-being, or who is abandoned by his parent or other custodian. . ."

*Code Ann.* § 24-2421 (Ga. L. 1951, p. 303), provides "[w]hen a child is found by the court to come within its jurisdiction and is found to be in a state of neglect, dependency, under insufficient and improper guardianship, or whose custody is the subject of controversy, or who is in a state of delinquency, the court shall so decree and in its decree shall make a finding of the facts upon which the court exercises its jurisdiction over such child. . ." Upon such decree the court may proceed to take specific action as to the child.

After hearing evidence the court entered the order excepted to wherein it was recited "[t]he court having found that said children of Robert Elmore Kennison and Gloria June Kennison came within its jurisdiction and were found to be in a state of neglect, dependency, and under insufficient guardianship relative to their father, Robert Elmore Kennison; therefore, said Robert Elmore Kennison is ordered by this court under paragraph 5 of Section 24-2421 of the Code of Georgia to pay $30.00 per week toward the support of his two minor children."

We are of the opinion that the evidence does not support the

finding of the court that the children were "in a state of neglect, dependency, and under insufficient guardianship" within the meaning of the Juvenile Court Act so as to give the court jurisdiction of the children.

The petition filed with the Juvenile Court of Ware County by Robert E. Lee, whose identity is not shown, alleged that the children reside with their mother in Ware County; that the children are subject to the jurisdiction of the court, "the particular facts being as follows: complaint is made that the above named children are not being supported by the father and that the children are in need of support. It is requested that this court take action to see that the father provides them with the necessary essentials for their welfare."

The evidence is undisputed that on or about February 25, 1961, and prior thereto, the plaintiff in error, the husband, was domiciled and residing in Glynn County and maintained a home there in which he and his wife and two children resided. On that date, while the husband was away from home, his wife left their home taking the two children with her and went to the home of her mother and sister in Ware County where she was staying when this petition was filed on March 31, 1961. The husband testified that he was away from home helping a friend repair his car, and when he returned he found his wife and children gone and a note from his wife accusing him of running around with a woman and not working on a car. The husband testified, and his testimony was undisputed, that he had written his wife twice since she left asking her to bring the children and come back to their home in Glynn County and that she refused to return. The evidence is that the husband had housed, fed, and clothed his wife and children prior to her leaving home and taking the children, although the wife in her testimony complained that the house was too small, and that they lacked for food and clothing, but testified that her husband gave her $20 per week for groceries and that she had a charge account both at the grocery store and the clothing store. She said that he mistreated her and the children and that it was on account of the children that she left home; and that he has not sent anything to take care of them and hasn't been to see them since

they left. The wife's sister testified that the children seemed to be undernourished when they came to live with her and her mother "because when they came they couldn't seem to get enough to eat." The older son told the judge that "I had enough to eat, but could have had more." Several witnesses testified that the children were well provided for in their home in Glynn County and that the father was a person of good moral character and was active in his church.

There is no evidence whatever that the children are not living in a good home in Ware County or that they are without adequate food, shelter and clothing or without proper guardianship and not living under pleasant, moral or Christian surroundings. The only thing this record clearly establishes is that the wife decided to leave her husband and to take the children with her, which she did, and that the father did not contribute to their support from February 25, 1961, the date they left, to April 7, 1961, the date of the hearing, and that support of the children by the father was desired. The law provides the wife with a complete and adequate remedy for support of herself and her children, as an action will lie in Glynn County Superior Court against the husband for alimony for the wife and support for the children.

There is nothing in this record which supports the finding of the trial court that the children were "under insufficient guardianship." The father is the natural guardian. *Code* § 49-102. There is no evidence that the father has abandoned his children. If he had abandoned them the mother would have become the guardian. In either event the children are under a guardian and so far as this record discloses the guardianship is sufficient. See *McCallum v. Bryant,* 212 Ga. 348 (92 SE2d 531).

There is no evidence to support the finding of the court that the children were in a state of neglect, so as to give the court jurisdiction. The Juvenile Court Act does not define "neglect," or what is meant by a child "who is neglected."

A "neglected child" within the meaning of the statutes giving juvenile courts jurisdiction is defined by statute in many states.

Section 2151.03 of the Revised Code of Ohio defines "neglected child" as including any child "(A) Who is abandoned by his

parents, guardian or custodian. (B) Who lacks proper parental care because of the faults or habits of his parents, guardian, or custodian. (C) Whose parents, guardian, or custodian neglects or refuses to provide him with proper or necessary subsistence, education, medical or surgical care, or other care necessary for his health, morals, or well being." See In re Masters, 165 Ohio St. 503 (137 NE2d 752).

"[T]o constitute "neglect of a child," there must be a wilful or indifferent disregard of the duty owed by a parent to his child." In re Kronjaeger, 166 Ohio St. 172 (140 NE2d 773, 776).

An Oklahoma statute defines "dependent" or "neglected child" as any male under 16 and any female under 18 who for any reason is destitute, homeless, or abandoned; or dependent upon the public for support; or has not the proper parental care or guardianship. See In re Davis, 206 Okla. 405 (244 P2d 555).

Webster's New International Dictionary, Second Edition, defines "neglect" as "disregard of duty from indifference or willfulness."

Without attempting to make an all-inclusive ruling as to what constitutes neglect under the Juvenile Court Act so as to give a juvenile court jurisdiction of a child, suffice it to say that where, as here, the evidence is that the mother, without the consent of her husband, removes the children from the home which he maintains for them, takes them to her mother's home, where they remain with her for about 40 days during which time the father makes two requests upon her to come home and bring the children, and there is no evidence that she neglected to take care of the children, or that they are not being well fed, clothed and maintained in a good home under good moral conditions, and the only neglect charged is that the father has not contributed to their support, neglect such as would give the juvenile court jurisdiction is not shown.

We do not believe that it was the intention of the General Assembly to confer jurisdiction upon juvenile courts to determine the issue of support of a minor child in a situation such as exists here when the General Assembly many years before

the passage of the Juvenile Court Act provided a complete and adequate remedy for such relief. See *Code* §§ 30-206, 30-207, 30-213. Especially is this true when the Juvenile Court Act so construed would possibly contravene the provision of the Constitution of Georgia (*Code* § 2-401) which provides that laws of a general nature shall have uniform operation throughout the State and that no special law shall be enacted in any case for which provision has been made by an existing general law.

Neither does the evidence support the finding of the court that the children were "in a state of dependency" such as would give the juvenile court jurisdiction. While there is no statute in Georgia defining what is meant by "dependency" or what is a "state of dependency" within the meaning of the Juvenile Court Act, the General Assembly has given a definition of the words "dependent child" in the Dependent Children's Assistance Act (Ga. L. 1950, pp. 307, 308; *Code Ann.* § 99-902), to wit: "Dependent child means a needy child under the age of 16, who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and whose relatives are not able to provide adequate care and support of such child without public assistance, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepsister, uncle, or aunt, in a place of residence maintained by one or more of such relatives as his or their own home. . ."

A State of Washington statute defines a "dependent child" as "any child under the age of 18 who is destitute, or whose home by reason of neglect by the parents or either of them is an unfit place for such child, or whose father, mother, guardian, or custodian, does not properly provide for such child, and it appears that such child is without proper means of support." In re Hudson, 13 Wash. 2d 673 (126 P2d 765). See In re State in Interest of Graham, 110 Utah 159 (170 P2d 172), quoting the Utah statute defining a "dependent child" as a child who is homeless or destitute or without proper support or care through no fault of his parent.

It is sufficient to show dependency if the child is dependent upon the public for support or is destitute, homeless or aban-

doned at the time the suit is instituted. Thomson v. Harrell (Tex. Civ. App.) 271 S. W. 2d 724.

"The law contemplates an existing condition of dependency that requires the intervention of the juvenile court, and not what the situation might be in the future." 31 Am. Jur. 316, § 37, citing In re State in Interest of Johnson, 110 Utah 500 (175 P2d 486), holding "that a petition alleging that a mother is financially unable to provide for her child and will not provide a proper home and necessities for him does not allege sufficient grounds for depriving her of the custody of her child and adjudicating him as dependent."

It is difficult to lay down a hard and fast rule as to what constitutes "dependency" or who is a "dependent child" within the meaning of the Juvenile Court Act. This is particularly true where, as here, the statutes do not purport to furnish a definition of the terms. However, we conclude without difficulty that the facts in this case, as heretofore related, do not establish dependency of these children within the meaning of the act. Even if failure of a father to support his children were sufficient to establish dependency, such failure as shown here would not be sufficient, for here the father indicated a desire to have his children returned home where he could support them. They had been away from him only 40 days when this proceeding was begun. He had not been asked by the mother to contribute to their support. There was no showing that they were in need of support. Although it was the duty of the father to support them, where, as here, the law affords a definite, proper and adequate method for the wife to secure support for the children from the father, of which the wife had not availed herself, it would be far fetched for this court to conclude that the legislature intended that under such conditions the juvenile courts could take jurisdiction of the children to make the father contribute to their support.

Accordingly, since the finding of the Juvenile Court of Ware County that it had jurisdiction of these children because they were in a state of neglect, dependency and under insufficient guardianship was without evidence to support it, the court erred in taking jurisdiction of these children. The court being with-

out jurisdiction the judgment awarding custody, ordering the husband to contribute $35 per week to the support of the children and to pay the wife's hospital and doctor bills during pregnancy and childbirth is a nullity and of no force and effect.

*Judgment reversed. All the Justices concur.*