**In the Matter of Patsy Lou PULLIAM and Danny Theodore Pulliam.**
**Junie W. PULLIAM, Plaintiff in Error,**
**v.**
**STATE of Oklahoma, Defendant in Error.**
No. 39369.

Supreme Court of Oklahoma.
March 6, 1962.

Floyd L. Walker and C. E. Talley, Tulsa, for plaintiff in error.

William E. Rutledge, Tulsa, special counsel for defendant in error.

PER CURIAM.

This appeal presents the question of the custody of the two children of the appellant Junie W. Pulliam who is the father of the children. The matter had its inception when a petition was filed in the Juvenile Court of Tulsa County on November 14, 1958, to subject Patsy Lou Pulliam and Danny Theodore Pulliam, then about ages 4½ years and 3¼ years, respectively, to the jurisdiction of that court as dependent

and neglected children. The initial order determined their status as such and terminated the rights of the natural parents and made them wards of the court. On appellant's motion to vacate this order for lack of notice a rehearing was held March 30, 1959, and a similar order was again made. The father appealed to the District Court, where after trial de novo and extensive hearings, the order of the Juvenile Court was affirmed. The appellant father has appealed to this court.

We will first dispose of the question of the sufficiency of the evidence to support the judgment. The mother, Dorothy, perfected no appeals and it is only necessary to state that the record amply reflects a disregard on her part for the moral and personal needs of the children.

■ The factual evidence and evidence supporting the judgment is that in June or July, 1953, when the appellant was about 31 or 33 and Dorothy was about 15, they commenced the relationship resulting in the births of Patsy and Danny. In July, 1953, they left for California and although on several occasions a legal marriage was contemplated, the ceremony was never accomplished. They lived in the vicinity of Imperial, California, where Patsy was born May 31, 1954, and Danny on August 16, 1955. There is some testimony that appellant beat Dorothy. Part of the time appellant was a taxicab driver. In April, 1956, when Dorothy became 18, she left with the children and presumably went back to Arkansas where her mother lived. In the summer of 1956 Dorothy was in Wichita, Kansas, and wrote appellant and he went there and took Dorothy to her mother in Arkansas. While in Wichita appellant was arrested and fined for being drunk. In Arkansas a marriage license was secured but no marriage ceremony was performed. In the words of appellant "Well, she—she ran off and hid the children out in the mountains." Appellant returned to California and Dorothy married a man by the name of Hill. In the fall of 1956, appellant, with knowledge of the marriage, returned to Arkansas, but Dorothy was in Indiana with the children, where she was picking tomatoes. About October, 1956, appellant went back to California. Later he sent some money to Dorothy in Ft. Smith "when she was in some kind of trouble." In May, 1957, upon hearing Dorothy was in jail, he came back to Arkansas, and failing a reconciliation with Dorothy, secured temporary custody of the children by court order, and returned to California with them, where he stayed until January, 1958. While there the children were kept or cared for on occasion by his former wife, his adult daughter by that marriage, his brother and the mother of his sister-in-law.

Regarding appellant's former marriage, there is testimony that the wife secured a divorce in 1944 on the grounds of abandonment and desertion, and that appellant contributed nothing to the support of his daughter by that marriage, except two $20 payments.

In January, 1958, on order by the Arkansas court, he returned to Arkansas with the children, where he met Dorothy (who was still "married" to Hill), and he, Dorothy and the two children went back to California. One month later Dorothy left with the children. In July, 1958, she and the children were picked up by the Tulsa police under circumstances of Dorothy being drunk and living with a man other than her husband. The children were taken in charge by the Juvenile Court and Dorothy went back to Arkansas.

This constitutes a fairly accurate description of events preceding and after the births of the children and of their life while presumably under or by right subject to control and custody of appellant. After the Juvenile Court took charge the children were each placed in a foster home. The foster parents have expressed a desire and have taken initial steps to adopt the children.

At the time of the trial (July 25, 1960) appellant was living in Arkansas with his

brother with whom he had started a lumber hauling enterprise. He stated that if this business did not become profitable then he could work in Arizona or California. It was his intention, if awarded the children, to make his home with this brother and his brother's wife. If this was not approved or satisfactory, then, he stated, a brother in Arizona or a brother in California, or his adult daughter in Arizona would help him look after the children. However, he had not heard from his daughter in about 7 months and was not sure of her location. There is evidence that the brother (Otis) in Arkansas, in December, 1959, was a police officer in Imperial, California, and was discharged because of being drunk and having an altercation with a Mexican and that he had acted as a shill in a card game. Ruth (wife of Otis) was quoted as saying in the past that she would not take care of the children, but at the trial Ruth testified she would take them "if that is the only way he can get them. And I don't mind it a bit."

We have delineated in some detail the events and circumstances presented to the trial court because of the gravity of denying a father the custody of his children. It is our opinion that the trial court was guided by what appeared to be for the best interests of the children and that the evidence reasonably supports the judgment. Appellant failed in his responsibility to exercise parental care and guardianship. This is evident throughout his course of conduct beginning with the child of his first marriage; his cohabitation with Dorothy when she was 15 and continuing without benefit of a marriage and after she had admittedly married another man; his inability to prevent removal of the children to other states where they remained for extended periods with little, if any, care or support from him. Nor do we see anything in appellant's contemplated future action that will defeat the judgment. The use of relatives to care for the children is an expedient that appellant had resorted to in the past and the trial court could well believe

it would have no better result. The trial court saw and heard the witnesses appearing before him and was in better position to give to all the evidence its proper weight.

The trial court's judgment that the children were dependent and neglected as defined by 10 O.S.1951, Sec. 101, and denying custody to appellant is not against the clear weight of the evidence.

■■■ In McNatt v. State, Okl., 330 P. 2d 600, we stated in the syllabus as follows:

"In awarding custody of a dependent or neglected child the court or judge is to be guided by what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare.

"The right of a parent to custody of his minor child is of great importance in determining right to custody, but it is not an absolute right and it is qualified by considerations affecting the welfare of the child.

"In proceedings to determine the permanent custody of a dependent or neglected minor child, the judgment of the trial court will not be disturbed when it is not clearly against the weight of the evidence nor contrary to law."

■■■ Appellant also complains of the admission of testimony by the prospective adoptive parents in whose homes the children had been placed. It is argued in effect that such evidence was prejudicial because it injected into the controversy the possible material advantages to the children in their foster homes.

The trial court admitted the testimony on the strength of our decision in In re Davis, 206 Okl. 405, 244 P.2d 555, wherein we recognized that it was proper, in a custody matter, for the court to consider the ties of love and confidence that had grown up between the child and its foster parents, over a considerable period of time, in determining whether it was best for the child not to disturb that relationship. Exami-

nation of the relatively brief complained of evidence reveals that the testimony concerned the personal and affectionate relationship developed and existing between the children and their foster parents. Any deductions as to material advantages arise only by inference because of the revealed employments of the male foster parents. It is true that the foster parents' custody had been of short duration.

However any basis for complaint that the testimony was prejudicial was removed when the trial court rendered the judgment. At that time the judge announced that he would totally disregard the status or rights of the prospective adoptive parents for the purpose of his decision and that his ruling would have been the same even though the children were in a children's home or orphanage.

Appellant also urges that the lower court erred in granting a new trial after the initial trial in the District Court. At an earlier trial of the matter, where appellant was the only witness, a judgment was rendered in favor of appellant. A motion for new trial was filed. At the same term the court granted a new trial upon presentation of additional evidence. Appellant contends this was error.

The alleged error was not set up in the appellant's motion for new trial or in his petition in error. This court will not review an alleged error of the trial court unless the error complained of has been set up and presented in motion for a new trial as well as assigned for review by the petition in error. State Insurance Fund v. Trieschmann, 206 Okl. 533, 244 P.2d 1128, 1132, and Maxfield v. Maxfield, Okl., 258 P.2d 915.

The judgment is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

The court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.