STATE of Oklahoma, ex rel., Robert H. MACY, District Attorney of the Seventh Prosecutorial District, Plaintiff/Appellee,

v.

FOUR THOUSAND TWO HUNDRED SIXTY DOLLARS AND NO/100 ($4,260.00), Defendant,

v.

Ralph David SWEPSTON, Respondent/Appellant.

No. 84642.

Supreme Court of Oklahoma.

Sept. 17, 1996.

James B. Robertson, Assistant District Attorney, Robert H. Macy, District Attorney, Oklahoma City, for Appellee.

Steve Nash, Oklahoma City, for Appellant.

SIMMS, Justice:

Before us are questions concerning the adequacy of the State's service of Notice of Seizure and Intended Forfeiture on respondent. Although the Uniform Controlled Dangerous Substances Act (the Act), 63 O.S.Supp.1992, § 2–506(C), provides for notice to a property owner by mailing or publication, this respondent was personally served Notice of the proceeding by the assistant district attorney prosecuting the related criminal action. On appeal he takes issue with the manner and method of this service. We find his arguments unconvincing.

Respondent, Ralph Swepston, was arrested by Oklahoma City Police officers for distribution of methamphetamine on August 29, 1991. At the time of his arrest he was in possession of $4,260.00 in cash which was seized pursuant to the Act. The State of Oklahoma initiated a forfeiture action against the currency by filing the Notice of Seizure and Intended Forfeiture alleging the cash had been in Swepston's possession and was used, or intended to be used, for illegal purposes relating to distribution of a controlled dangerous substance. The Notice reasonably served on Swepston gave him forty-five days to respond to the allegations and file an answer in the case.

On April 29, 1992, the State sought and received a default *in rem* judgment ordering the money forfeited under the Act. In its order the trial court found that respondent

had not entered an appearance in the case or filed an answer and that the substantial allegations of the Notice therefore stood admitted. The trial court also found that Swepston had been personally served with notice as evidenced by an affidavit of Steve Deutsch. In his affidavit, Deutsch stated that he had been the designated prosecutor at respondent's preliminary hearing for the related drug charge, and at that hearing on September 23, 1991, he had personally delivered a copy of the Notice to Swepston.[1]

On February 2, 1994, respondent filed a petition to vacate the default judgment. He denied having received the Notice of forfeiture but claimed that, even if he had received it, service was "not in compliance with the Oklahoma Pleading Code" in that it was not effected by a licensed process server or by certified mail. Thus, respondent sought vacation of the default judgment pursuant to 12 O.S.1991, § 1031 (Fourth), for fraud practiced by the State in obtaining the judgment, and 12 O.S.1991, § 1031 (Third), mistake, neglect or omission of the clerk or an irregularity in obtaining the judgment.

The State asserted that while its personal service on respondent was not explicitly specified in 63 O.S.Supp.1992, § 2-506, it was better service than the statutory method; it provided greater due process and therefore respondent suffered no injury and no detriment in the constitutional sense.

The trial court agreed and denied respondent's petition to vacate. Respondent appealed, maintaining that personal service did not effectively initiate the action against him and give the trial court jurisdiction over him and the issues in the case. Swepston contends that the statutory provisions set out in 63 O.S.Supp.1992, § 2-506,[2] authorizing service by mailing and publication are exclusive and that personal service on him was therefore unacceptable. He presents the unusual argument that reversible error occurred because he received better service than specified by statute.

Swepston also argues that even if personal service could be allowed, it should not have been delivered by the assistant district attorney prosecuting his criminal action because that service comes within the rule established in our decisions of *Bramlett v. District Court of Marshall County,* 557 P.2d 424 (Okla. 1976), and *White Stag Manufacturing Co. v. Mace,* 556 P.2d 997 (Okla.1976), disapproving of service of process by one "interested" in the outcome of an action.[3]

The Court of Appeals found that *Bramlett* did apply and was dispositive of the action as it disallowed service of notice on Swepston by the assistant district attorney because he was employed by the State to prosecute the related criminal matter and he was thereby interested in the forfeiture action. That court therefore reversed the trial judge's refusal to vacate the default judgment entered in favor of the State.

We previously granted certiorari and vacate the Court of Appeals decision.

■ It is true that *Bramlett* and *White Stag* disallowed service of process effected by

---

1. There is some later confusion in the record as to whether the notice was delivered to the respondent or his attorney present with him at the preliminary hearing. This is not an important point, as there is no contention that if the notice was served on the attorney, it failed to reach respondent. *See Steincamp v. Steincamp,* 593 P.2d 495 (Okla.1979).

2. Section 2-506(C) provides:

"C. Notice shall be given by the agency seeking forfeiture according to one of the following methods:
1. Upon each owner or party in interest whose right, title or interest is of record in the Tax Commission, by mailing a copy of the notice by certified mail to the address as given upon the records of the Tax Commission;

2. Upon each owner or party in interest whose name and address is known to the attorney in the office of the agency prosecuting the action to recover unpaid fines, by mailing a copy of the notice by registered mail to the last-known address; or
3. Upon all other owners or interested parties, whose addresses are unknown, but who are believed to have an interest in the property, by one publication in a newspaper of general circulation in the county where the seizure was made."

3. We do not address the contentions of error raised by respondent which were not presented to the trial court in support of his petition to vacate judgment, as such arguments cannot be raised for the first time on appeal. *See Sims v. Bennett,* 208 Okla. 321, 255 P.2d 916 (1953).

persons determined to be materially interested in an action. In *Bramlett* the Court looked with disfavor on service by an attorney retained to represent a party, finding him precluded from serving process because he was a person "interested" in the litigation. Likewise, in *White Stag* an employee of a law firm retained to represent one of the parties in the action was also found ineligible to serve process.

*Bramlett* and *White Stag*, however, were based entirely on 12 O.S 1971, § 158, in effect at the time those opinions were promulgated which specifically prohibited the service of summons by an "interested" party. It provided, in pertinent part:

> "The summons shall be served by the officer to whom it is directed, who shall endorse on the original writ the time and manner of service. It may also be served by any responsible citizen of the county not a party to or interested in the action, ..."

That statute no longer exists. It was repealed in 1984 when the new Pleading Code was enacted. *See* Oklahoma Sess. Laws 1984, ch. 164, § 32. Those decisions concerned only questions about the statute's interpretation and have no relevance to the issues before us in this case.

Swepston argues § 2–506(C) sets forth the exclusive manner of service based upon language in *State ex rel. Henry v. $17,023.36*, 828 P.2d 448 (Okla.App.1992), which reads:

> "We consequently find 63 O.S. § 2–506(C), providing for notice by registered mail, or alternatively notice by publication, controls the methods of notice to be given in drug related forfeiture cases generally, ..." 828 P.2d at 451.

In that case, the State brought a forfeiture action and mailed notice to the claimant at his last known address. The notice was returned with the notation, "Moved Left No Address." Having failed to obtain service by registered mail, the State gave notice by publication under § 2–506(C). No response was made and the trial court granted default judgment. The Court of Appeals reversed the trial court's order refusing to vacate the default judgment and remanded the case to the trial court to determine whether under those circumstances the efforts made by the State to find the claimant's address met constitutional safeguards of due process. The above quoted language concerned only whether § 2–506(C) would apply to the forfeiture proceeding rather than the general service of process statute, 12 O.S.1991, § 2004(C)(3).

While that decision does recognize the proper application of § 2–506 to forfeiture proceedings over the general provision, it does not hold that manner of service to be *exclusive*. To the contrary, that decision recognizes that notice is a jurisdictional concern of constitutional dimension and holds that minimum procedural due process requirements must be met in forfeiture proceedings. This is a correct assessment of the law.

In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court of the United States recognized that the requirements of constitutionally adequate notice do not depend on the classification of actions. Regardless of distinctions between actions *in rem* and those *in personam*, when judicial proceedings may deprive a person of life, liberty or property, the Due Process Clause requires the adjudication to be preceded by notice and an opportunity for hearing appropriate to the case.

Addressing this issue of sufficient notice, the Court set forth the often-quoted principle that:

> "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. at 657 (Citations omitted).

Discussing the balancing of interests of the State against those of the individual litigant protected by due process considerations, the Court observed that personal service of written notice within the jurisdiction, "the classic form of notice always adequate in any type of

proceeding" is not regarded as indispensable in all circumstances. Other forms of notice, although less reliable, are nonetheless constitutionally adequate in some actions. Of particular interest in the case before us, is the Court's observation that one instance where publication notice, even though very unreliable, is historically sufficient is in forfeiture proceedings. Mailing and publishing notice of the government's seizure and intended forfeiture of property—as provided by § 2–506(c)—is a traditional manner of service which is acceptable as it is intended to be notification that is *supplemental* to actual notice. The law assumes that the owner of property has it in his possession and knows when it has been taken from him. The Court explained:

> "It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, attachment of a chattel or entry upon real estate in the name of law may reasonably be expected to come promptly to the owner's attention. When the state within which the owner has located such property seizes it for some reason, publication or posting affords an additional measure of notification. A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, ... or that he has left some caretaker under a duty to let him know that it is being jeopardized.... As phrased long ago by Chief Justice Marshall in *The Mary*, 9 Cranch 126, 144, 3 L.Ed. 678, 'It is the part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it.'" 339 U.S. at 316, 70 S.Ct. at 658.

This legal assumption is also discussed in the classic constructive service decision, *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877), where the Court stated:

> "Substituted services by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale." 95 U.S. at 727.

The minimal due process standard of *Mullane* was applied by the Supreme Court in a forfeiture proceeding with a factual situation nearly identical to the one before us, leaving no question under these circumstances compliance with § 2–506 would have resulted in constitutionally insufficient service as personal service was constitutionally required. In *Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), the Supreme Court held that where the State *knew* that the owner of property was not at the address to which notice of the forfeiture proceeding was mailed and, moreover, knew that he could not get to that address since he was then confined in jail, the manner of service although permissible under the statute, was not "reasonably calculated" to apprise the owner of pendency of forfeiture proceedings and deprived him of due process of law.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, and the decision of the trial court is AFFIRMED.

All the Justices concur.