1998 OK CIV APP 186

**In the Matter of A.M., Alleged Deprived Child Under 18 Years of Age.**

**State of Oklahoma, Petitioner/Appellee,**

v.

**Kristy Mills, Respondent/Appellant.**

**No. 91,521.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 18, 1998.

find the evidence supports the trial court's adjudication, and, in the absence of legal error, affirm.

¶2 Appellee, State of Oklahoma (State), filed a Petition on November 17, 1997, asking the trial court to adjudicate A.M. as "deprived for appropriate placement." State alleged A.M. was deprived due to neglect by her parents, such neglect consisting of inadequate shelter and protection. The petition further alleged specific facts in support of its claims of neglect and lack of protection. The petition noted A.M. was in custody of DHS through a emergency temporary custody order.

¶3 An initial hearing was held on February 19, 1998. At that time, A.M.'s father (Father) stipulated to the facts in the petition and A.M. was adjudicated deprived as to the father. Mother denied the allegations in the petition. Non-jury adjudication was set for Mother. A.M. remained in DHS's custody. The trial court appointed counsel to represent A.M., who was a year old at the time of trial.

¶4 After the matter had been twice reset, hearing was held on June 2, 1998. State, A.M. and Mother all put on testimony. The trial court found it was in the best interest of A.M. to adjudicate her deprived. Mother appeals from the trial court's adjudication.

¶5 In a deprived adjudication, it is State's burden to demonstrate to the trial court, by the clear weight of the evidence, that adjudication is warranted. *Matter of G.C.*, 1996 OK CIV APP 131, 928 P.2d 974. In our review of such actions, which are triable to a jury, we will affirm the trial court's adjudication if it is supported by any competent evidence. *See, Matter of J.M.*, 1993 OK CIV APP 121, 858 P.2d 118; 10 O.S.Supp.1997 § 7003-3.8. Where, as here, the trial court is sitting without a jury, its findings are entitled to the same weight that would be given a verdict by a jury. *Matter of J.M.*, at 121.

¶6 Mother contends the trial court erred in adjudicating A.M. deprived because of [1]

Ronnie May, McAlester, Oklahoma, for respondent/appellant.

Ellen Corcoran, McAlester, Oklahoma, for petitioner/appellee.

*MEMORANDUM OPINION*

HANSEN, Judge.

¶1 Appellant, Kristy Mills (Mother), mother of the child A.M., seeks review of the trial court's order adjudicating A.M. as deprived and placing A.M. in the custody of the Department of Human Services (DHS). We

reversible errors of law regarding evidentiary rulings, and [2] inadequate proof. We will first consider the assertions of error in admitting or excluding evidence.

¶ 7 Mother contends the trial court erred in allowing evidence of another case involving A.M.'s older sister, K.M. We are unpersuaded by this contention. Mother does not contest that K.M. was, in fact, in DHS custody, or that the reason for the case involving K.M. was Father's violence toward Mother in K.M.'s presence. What Mother argues is that the evidence was improperly allowed as proof of her bad character in violation of 12 O.S.1991 § 2404, which prohibits evidence of a person's character "for the purpose of proving action in conformity therewith on a particular occasion."

■ ¶ 8 Presuming § 2404 is even applicable here, it provides for exceptions, including, *inter alia*, use of evidence of other wrongs or acts to prove intent or knowledge. The facts of K.M.'s case are directly relevant to the allegations of Mother's failure to protect A.M. The controverted evidence shows Mother knew Father was capable of violence, that Father's violent actions could be harmful to A.M., and that she was also aware of the legal consequences of allowing A.M. to be exposed to Father. The trial court did not err in allowing this testimony.

■ ¶ 9 As her next proposition of alleged trial court error, Mother asserts the trial court should have allowed Carol Thomas to testify on her behalf. Carol Thomas was Mother's former attorney. However, when the trial court denied Mother's request to have Ms. Thomas testify, Mother made no offer of proof as to what the testimony would have been. Error may not be based on a ruling excluding evidence unless:

> ... the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

12 O.S.1991 § 2104(A)(2).

¶ 10 The record shows Mother made no offer of proof, nor was the substance of the proposed testimony apparent from the context within which it was offered. Error cannot therefor be based on exclusion of Ms. Thomas' testimony.

¶ 11 We also note the exclusion of Ms. Thomas' testimony was based on State's objection that Mother had not "endorsed" her as a witness. Mother complains exclusion on this basis was erroneous. However, shortly before Mother called Ms. Thomas, a witness called by A.M. had been excluded based on Mother's objection, which was on the same grounds she now claims to be erroneous. Mother is not permitted to secure a reversal by assuming a position which is inconsistent with that taken in the trial court. *Samedan Oil Corp. v. Corporation Commission of State of Oklahoma,* 1988 OK 56, 755 P.2d 664. For either of the two foregoing reasons, Mother's contention has no merit.

■ ¶ 12 Mother contends the trial court erred in allowing A.M.'s foster mother, Donna Merritt, to testify over her objection. The testimony to which Mother objects was elicited when Ms. Merritt was recalled by A.M.'s appointed counsel after State and A.M. had rested. Mother argues she "was denied her right to a fair trial due to the fact that she was double-teamed by State's attorney and the child's attorney and as such the Court should not have allowed the child's attorney to play the role of a special prosecutor in this case."

¶ 13 Mother concedes in her appellate brief, "[i]t is clear from the statute that the child's attorney is appointed to watch out and protect the child's interest in the case." The statutory authority for appointment of a separate attorney to represent the child is set forth in 10 O.S.Supp.1997 § 7003–3.7(A). Mother fails to point out, however, how A.M.'s appointed counsel could protect her interest if he is barred or inhibited, merely by his status, from actively participating in the adjudication hearing. Mother further fails to show how the testimony A.M.'s counsel elicited from Ms. Merritt was "for the state or against the parent", as Mother alleges. We find the actions of A.M.'s counsel

were consistent with both the authority set forth in § 7003–3.7, and the express paramount consideration in proceedings concerning a child alleged to be deprived—the best interests of the child. 10 O.S.Supp.1997 § 7001–1.2.

¶ 14 Mother asserts the evidence was insufficient to prove A.M. deprived. As we noted above, the trial court's adjudication is to be affirmed if it is supported by any competent evidence. *Matter of J.M.*, 858 P.2d at 121. The petition alleged Mother [1] kept A.M. in a home with inadequate heat even though A.M. was ill, and [2] maintained a relationship with Father, even though Mother's other two children had been removed from her custody because of Father's history of violence toward her.

¶ 15 An investigator for DHS testified she received a referral, concerning inadequate shelter for Mother's family, on November 10, 1997. That day, when she went to the address given in McAlester, there was no response, but she heard a radio playing inside. She left a letter for Mother. She found no one home the next day, and on November 12th found only Father at the house. The investigator further testified the house was "pretty clean", but was "really cold", with the only heat being a small electrical space heater.

¶ 16 The investigator stated that after she had seen A.M. at daycare, and noted she was ill, she saw Mother on the afternoon of November 12th. Mother acknowledged A.M. was running a fever, had a cough and had been prescribed antibiotics. Mother said she and A.M. had been staying at the house "off and on for about two weeks", that she intended to get the heat on in a couple of days, and that she would "go here and there to get some money" to turn the heat on.

¶ 17 The investigator also testified she was concerned about Father being at the home because of his history of violence toward Mother committed in front of A.M.'s three year old sister, K.M. The investigator said Mother told her she was aware she was not to have contact with Father, but had dropped her protective order against him so he could visit A.M. Mother told her Father was also helping with the house and fixing up a car for her to drive.

¶ 18 Because of her concern regarding A.M.'s well being, the investigator obtained an emergency order on November 13th, but was unable to serve it for two weeks because she could not locate Mother. In the interim, Mother and A.M. had been living in three or four different locations in southeastern Oklahoma. They were found with Father's family in Coalgate.

¶ 19 Mother counters with the testimony of her mother, Bonnie Agee. Ms. Agee testified Mother and A.M. had not been staying at the home in question because of the lack of heat. She also testified she and Mother had gone to the house and found it straightened and cleaned, but that Mother said she did not know who had done it. Mother suspected Father had been in the house, left and did not go back. Ms. Agee further stated, however, she was not even aware Mother and A.M. had moved into the house until three days later, and that she was unaware how Mother had moved because Mother had no car.

¶ 20 In determining whether a child is neglected within the meaning of the Oklahoma Children's Code, 10 O.S.Supp.1996 §§ 7001–1.1 *et seq.*, the word neglect is defined as the disregard of duty owing to indifference or willfulness. *Matter of Betty C.*, 1996 OK 96, 632 P.2d 412. The evidence supports a finding Mother was, at the least, indifferent to the well being of A.M. Mother was aware A.M. was ill, but had stayed in a home with virtually no heat and had no apparent plan to alleviate the situation.

¶ 21 Similarly, Mother was aware of Father's violent propensities. The record reflects he had raped Mother in front of A.M.'s older sister, and that both Mother and Bonnie Agee had obtained protective orders against Father. Notwithstanding this history, the evidence shows Mother had facilitated A.M.'s exposure to Father. This

significant risk to A.M. is in itself sufficient harm to the child to warrant a finding that A.M. was deprived for lack of protection by Mother. The trial court's adjudication that A.M. was deprived within the meaning of the Children's Code is supported by competent evidence of record. There is no reversible error of law. The trial court's order is therefore AFFIRMED.

ADAMS, J., and BUETTNER, P.J., concur.