12 P.3d 972 (2000)
2000 OK CIV APP 110
In the Matter of A.D.W., an Alleged Deprived Child.
Michael West, Appellant,
v.
State of Oklahoma, Appellee.
No. 93,689.
Court of Appeals of Oklahoma, Division No. 1.
April 21, 2000.
Rehearing Denied May 26, 2000.
Certiorari Denied September 26, 2000.
C. Merle Gile, Oklahoma City, Oklahoma, for Appellant.
Robert H. Macy, District Attorney, Jane A. Brown, Asst. District Attorney, Oklahoma City, Oklahoma, for Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
*973 BUETTNER, Judge:
¶ 1 The State of Oklahoma alleged that the three-month old baby of Michael (Father) and Jeni West (Mother) was deprived because of physical abuse inflicted by Father.[1] The jury returned a verdict finding the child deprived and terminating Father's parental rights. Father argues that the trial court committed reversible error when it required him and his wife to share their peremptory jury challenges. He also contends that the jury instructions were confusing and contradictory. We disagree and affirm the judgment.
¶ 2 Normally, the plaintiff and defendant are entitled to three peremptory challenges. 12 O.S.1991 § 573. In a child welfare case, each of the three sides State, parents, and child, are entitled to three peremptory jury challenges. Matter of T.R.W., 1985 OK 99, 722 P.2d 1197, 1200. Section 573 has been interpreted to allow only three peremptory challenges to two defendants alleged to be joint tortfeasors, unless their positions were antagonistic. M & D Motor Freight Lines v. Kelley, 1948 OK 128, 202 P.2d 215, 220. In addition, 12 O.S. 1991 § 575.1 provides an alternative method of selecting a jury. It provides that when there is more than one defendant, ". . . and the trial judge determines on motion that there is a serious conflict of interest between them, he may, in his discretion, allow each defendant to strike three names from the list of jurors seated and passed for cause." 12 O.S.1991 § 575.1(b).
¶ 3 In Thompson v. Presbyterian Hospital, Inc., 1982 OK 87, 652 P.2d 260, the Oklahoma Supreme Court considered a case in which there were four defendants in a medical malpractice case. The trial court granted the defendant hospital three peremptory challenges and three challenges to the remaining three defendants. On appeal, *974 the court analyzed the issue using § 575.1 and recognized its historical basis:
Before the 1969 enactment of § 575.1, supra note 23, allowing additional peremptory challenges to multiple defendants, we held in M. & D. Motor Freight Lines v. Kelley, 201 Okl. 121, 202 P.2d 215 [1949] that whenever there is an antagonistic posture among co-defendants an additional number of peremptory challenges would be warranted. Kelley constituted the common law of the state. The enactment of § 575.1 gave recognition to its teaching.
652 P.2d at 266 n. 25. The court then held that granting supernumerary challenges without affirmative proof of a "serious dispute" is prejudicial as a matter of law.
Prejudice to the plaintiff will be deemed to have occurred when any additional peremptory challenge is allowed to a defendant who fails to show the factum of a "serious dispute" with one or more co-defendants in the case. The decision to grant additional challenges cannot be viewed as a matter of unregulated judicial discretion. Unless the record supports the presence of a serious dispute, prejudice will be presumed and the judgment will be reversed for unwarranted allowance of supernumerary challenges.
652 P.2d at 268.
¶ 4 More important to the pending matter is the Oklahoma Supreme Court's apparent adoption of § 575.1 as the exclusive means of granting supernumerary challenges:
The parameters of judicial discretion in considering requests for additional peremptory challenges are of a constitutional dimension. We adopt here a practice which confines the allowance of additional challenges within the bounds of the statute and of the fundamental law's protection of the right to an impartial jury.

652 P.2d at 268.
¶ 5 Before trial, the parents joined in a motion for three peremptory challenges each because they had separate defenses and separate attorneys. The attorneys for the parents expressed a concern about an appearance that they had a team effort. Father's lawyer specifically asked for allowance of three peremptory challenges because he believed that the State would try to present evidence that if anyone shook the baby, it was Father.[2] The motion was overruled. The record reveals that, although the parents had different charges against them, i.e., Father was alleged to have physically abused the baby and Mother was charged with failing to protect the baby, Father unequivocally denied hurting his child in any manner and Mother did not believe that Father hurt the child. Both parents also stood together in their belief that neither should have known that the child was hurt. They had taken the baby to her pediatrician and asked him to examine her ribs for a "clicking" sound. The parents reported that the pediatrician stated that it was a "floating rib" and there was no need for concern. Thus, the parents' defenses were neither antagonistic under Kelley nor was there a serious conflict between the defendants under § 575.1.[3]
¶ 6 We hold that different allegations against parents in a deprived action, necessitating different defenses, does not necessarily rise to the level of antagonistic positions or "serious conflict" between the defendants. The trial court did not abuse its discretion in denying the motion for three peremptory jury challenges for each parent/defendant.
¶ 7 Next, Father contends that the jury instructions were confusing and contradictory in explaining the State's burden of proof for a finding of deprived and for a finding that parental rights should be terminated. Father did not object to the instructions. "If objection to the refusing or the giving of an instruction is not made in accord with the procedure outlined in § 578 [12 O.S.1991 § 578exceptions to instructions], the authority of the appellate court to review the alleged error is severely limited." Sullivan *975 v. Forty-Second West Corporation, 1998 OK 48, 961 P.2d 801, 802. Citing Mason v. McNeal, 187 Okla. 31, 100 P.2d 451 (1939), the Sullivan Court stated that without "exception saved to the instruction as required by [§ 578], we are not at liberty to review the alleged error, except for fundamental errors of law." A "prejudicial misstatement of the law appearing on the face of an instruction constitutes fundamental error reviewable even in the absence of an exception taken pursuant to § 578." Sellars v. McCullough, 1989 OK 155, 784 P.2d 1060, 1063. We have read the instructions and there is no misstatement of the law. Nor are the instructions confusing or contradictory. They are "neither an abstract statement of law unconnected with the facts nor fatally confusing." Middlebrook v. Imler, Tenny & Kugler, M.D.'s, 1985 OK 66, 713 P.2d 572, 585. The appellate court will not set aside a verdict "where it appears the instructions taken as a whole do not establish that the jury was misled or the complaining parties' rights were prejudiced . . . ." Id. at 585, citing Lewallen v. Cardwell, 1958 OK 133, 325 P.2d 1074.
¶ 8 The briefs of the parties reveal a misunderstanding concerning the State's burdens of proof.[4] When the State seeks to prove a child deprived, its burden is by a preponderance of the evidence. Matter of J.B., 1982 OK 40, 643 P.2d 306, 307. The reasons for the usual civil standard of proof are easy to comprehend: the health and safety of a child should not be put at risk by an unnecessarily high burden of proof, and the adjudication does not terminate parental rights.[5]
¶ 9 The standard of proof required for the termination of parental rights of a child is "clear and convincing." Matter of C.G., 1981 OK 131, 637 P.2d 66, 70.[6] In adopting this standard, the C.G. Court stated: "The clear-and-convincing standard balances the parents' fundamental freedom from family disruption with the state's duty to protect children within its borders. It places an appropriately heavy burden upon the § 1130 [now § 7006-1.1] petitioner (termination-seeking party) to overcome the law's policy which identifies the child's best interest with that of its natural parents." In addition, in Matter of C.G., Justice Opala mentions in footnote 8, that the petitioner in deprived-status contests and termination proceedings under the Juvenile Code, 10 O.S. Supp.1979 § 1101 et seq., must prove its case by the clear weight of the evidence.
¶ 10 The cases relied on in footnote 8 are: In re Davis, 1952 OK 186, 244 P.2d 555, 559; McNatt v. State, 1958 OK 235, 330 P.2d 600, 601; and In re Pulliam, 1962 OK 56, 369 P.2d 646, 649. All of these cases used the clear weight of the evidence language to describe the standard of review on appeal:
The trial court heard the testimony of the witnesses and had before him the contesting parties and was familiar with all the surrounding circumstances, and was in position to determine what was for the best interest of the child, and his judgment will not be disturbed on appeal where it is not shown that the judgment is against the clear weight of the evidence.
In re Davis, 244 P.2d at 559.
3. In proceedings to determine the permanent custody of a dependent or neglected minor child, the judgment of the trial court will not be disturbed when it is not clearly against the weight of the evidence nor contrary to law. *976 McNatt v. State, 330 P.2d at 601; and In re Pulliam, 369 P.2d at 649.
¶ 11 Added to these two burdens placed on the State is the "clear weight of the evidence," which is the standard a parent must meet when the burden shifts to the parent in opposition to the termination of his rights. Matter of C.G., Id. at 71.
¶ 12 Thus, footnote 8 in Matter of C.G, which juxtaposed the burden of proof and appellate standard of review, was used in later cases to describe a burden of proof. In Matter of G.C., 1996 OK CIV APP 131, 928 P.2d 974 the court stated "In Matter of C.G., however, the Supreme Court recognized that in a deprived adjudication the state's burden is to demonstrate `by the clear weight of the evidence' that a deprived adjudication was warranted." 637 P.2d at 69 n.8.[7] The text to which footnote 8 is attached is the following sentence: "We note considerable diversity in the approach used in litigation over parental rights." Id. at 69. The essence of footnote 8 is to show the differences then existing in cases brought pursuant under to the juvenile code (public law) and those brought under private law such as in adoptions and divorce. In the body of the case, however, the Oklahoma Supreme Court unambiguously states that in termination proceedings, the State's burden is the clear and convincing standard, and that a parent then wishing to show that he complied with the "previously prescribed norms of parental conduct," meets his burden by "the clear weight of the evidence" standard. Matter of C.G., at 70-71.
¶ 13 The footnote statement in Matter of C.G. cannot overrule the burden of proof expressly stated in Matter of J.B.
¶ 14 In consideration of the holdings of the Oklahoma Supreme Court, the standards of proof the State must meet are "preponderance of the evidence" in deprived adjudications (Matter of J.B.), and "by clear and convincing evidence" in termination cases (Matter of C.G.). In termination actions, when the State has carried its burden of proof by clear and convincing evidence, the burden of showing compliance with parental norms may be shown by the parent by the "clear-weight-of-the-evidence" standard. (Matter of C.G.). The first two burdens of proof were those used in the instant case.
¶ 15 As a matter of clarity, we reiterate the standard of review that appellate courts should apply to deprived adjudications as well as terminations of parental rights. Although in termination cases the courts have adopted a traditional equity burden of proof, that is, clear and convincing evidence, on review, the amount of deference given by the appellate courts is the legal standard of review. Whether reviewing an adjudication of deprived or a termination of parental rights judgment, "where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not disturb its verdict and judgment based thereon. . . ." Matter of T.R.W., 1985 OK 99, 722 P.2d 1197, 1200, citing Hames v. Anderson, 1977 OK 191, 571 P.2d 831. Accord: Matter of K.L.H., 1993 OK CIV APP 127, 858 P.2d 1296; Matter of J.M., 1993 OK CIV APP 121 858 P.2d 118 (in termination of parental rights cases, where jury is waived, appellate court must affirm if the court's judgment is supported by any competent evidence).[8]
¶ 16 The trial court's order entered on the jury's verdict, terminating Michael West's parental rights in his child, A.D.W., is AFFIRMED.
¶ 17 CARL B. JONES, P.J., concurs;
¶ 18 GARRETT, J., concurring in result.
*977 GARRETT, J., concurring in result:
¶ 1 Generally, I concur. However, I do not agree that 12 O.S.1991 § 575.1 applies to this case. Without extensive discussion, I hold that a peremptory challenge to a juror is a completely different matter than a "strike". Section 575.1 applies, in civil cases, only when the trial judge decides to select a jury in the manner specifically authorized by that special statute.
¶ 2 A strike is not within the procedure normally followed in jury selection in both civil and criminal trials. Peremptory challenges are regularly exercised.
¶ 3 While I agree that the trial court did not abuse its discretion, I certainly would not rely on 12 O.S.1991 § 575.1 or on Matter of T.R.W., 1985 OK 99, 722 P.2d 1197. T.R.W. does not advise its readers of the method used by the trial court to select a jury. Thus, I must assume that the " § 575.1 method" was involved.
NOTES
[1] Mrs. West was charged with failure to protect the child. The jury returned a verdict finding the child not deprived as to Mrs. West.
[2] The baby was taken to the hospital by emergency personnel called by Father, who was alone with the child when the baby went limp. At the hospital, the staff determined that the baby had previously broken ribs and brain trauma.
[3] In a criminal case, multiple defendants are jointly allowed the same number of peremptory challenges as the prosecution unless their defenses are "inconsistent." 22 O.S.1991 § 655.
[4] For adjudications of deprived, the court must find that the allegations of the petition "are supported by the evidence, and ... that it is in the best interests of the child and the public that the child be made a ward of the court...." 10 O.S. Supp.1998 § 7003-4.5.
[5] "Applying the rationale to this cause we note that an adjudication of deprived status does not terminate parental rights.... Thus the risk of an erroneous proceeding is less onerous on a parent in an adjudicatory proceeding than in a termination proceeding. Contrary to this, the risk to a child and thus the State, is greater in an adjudicatory proceeding if a removal from custody of a parent where abuse is a ground for adjudication of deprived status is not effected by virtue of a greater standard of proof." Matter of J.B., 1982 OK 40, 643 P.2d 306, 308.
[6] Justice Simms, in a specially concurring opinion in Matter of C.G., argued that the clear and convincing burden of proof had been adopted in 1980 in Matter of Adoption of Darren Todd H., 1980 OK 119, 615 P.2d 287.
[7] In Matter of A.M., 1998 OK CIV APP 186, 970 P.2d 1198, the Court of Civil Appeals stated: "In a deprived action, it is State's burden to demonstrate to the trial court, by the clear weight of the evidence, that adjudication is warranted," citing Matter of G.C.
[8] Thus, while older cases, e.g. Matter of J.L., 1978 OK 37, 578 P.2d 349, 352, ("We have examined the record and weighed the evidence and find trial court's judgment is against the clear weight of the evidence insofar as it terminated appellant's parental rights;") and Matter of James H., 1978 OK CIV APP 28, 593 P.2d 1095, 1098, ("... the supreme court has applied the rule [in a termination proceeding] that the judgment of the trial court will not be disturbed unless it is clearly against the weight of the evidence or contrary to law.") applied the equity standard of review on appeal, it appears that Matter of T.R.W. has replaced that standard of review with the "any competent evidence" standard.